MANISTEE NAVIGATION CO. *v.* FILER.

1. EVIDENCE—STOCKS AND STOCKHOLDERS—BREACH OF CONTRACT—
   CORPORATIONS—FINANCIAL CONDITION.

     Evidence offered upon the trial of an action for breach
     of contract to purchase and pay for a quantity of sunken
     logs, which plaintiff agreed to raise and deliver, tending
     to show that the stock of plaintiff corporation had not
     been paid for and that its financial condition was weak,
     had no tendency to prove any material issue in such pro-
     ceeding and was properly excluded.

2. CONTRACTS—CONSTRUCTION—LOGS AND LOGGING—INTEREST.

     Where the plaintiff undertook to raise and deliver to de-
     fendant deadheads and sunken logs in a certain stream
     under an arrangement to be paid on the 10th of each
     month for all logs delivered during the preceding month
     less sums advanced, interest was recoverable upon the
     amounts so due and ascertainable from the date fixed
     in the contract for each installment.

3. SAME — LOGS AND LOGGING — SCALE — "FAIR AND EQUITABLE
   SCALE."

     Under the provisions of a logging contract providing that
     an advance of a stated portion of the contract price should
     be made each month, and that payment for the logs de-
     livered during the preceding 30 days should be made
     on the 10th of each month, less any advances received,
     and providing that the scale was to be made according
     to Doyle's rule; and that in the absence of the scalers
     of the Manistee Boom Company, scalers which were
     mutually agreeable to the parties were to be selected and
     each party to pay one-half of the expense, and that such
     scalers should make a fair and equitable scale under
     Doyle's rule as to logs delivered, the provisions of the
     contract that said scalers were to make in all cases a
     fair and equitable scale according to said rule, and that
     all logs delivered were to be scaled by employees of the
     Manistee Boom Company, did not indicate that a different
     scale was to be employed as to logs at the mill from that
     applying to logs up the river.

4. SAME—CONSTRUCTION OF CONTRACT.

Where it was customary in the community in which the contract was made to employ a scale known as a merchantable scale, which frequently scaled a less amount of timber than the log contained, and the parties got together and agreed upon a supplemental contract authorizing a more liberal scale than that which had been employed, because the plaintiff had made numerous complaints as to the totals credited to it under the merchantable scale used, the trial court did not commit reversible error in leaving to the jury the question what a fair and equitable scale under Doyle's rule meant.

5. SAME—QUANTUM MERUIT—DAMAGES—AMOUNT RECOVERABLE—BREACH OF CONTRACT.

Where the evidence tended to show that plaintiff had breached the contract which was in existence between the parties, providing for monthly payments in order to enable plaintiff to carry on its business, and the provisions of the contract were apportionable, plaintiff was not limited in the amount of recovery to a *quantum meruit* but was entitled as damages to the amounts provided for in the contract for such portion of the agreement as had been performed.

6. SAME—INDEPENDENT COVENANTS—SALES, DIVISIBILITY.

The question whether a contract is divisible depends to a considerable extent upon what the parties intended as expressed in their agreement: when the price is expressly apportioned or an apportionment may be implied by law to each item intended to be performed, the contract will be held to be severable.

7. SAME — RECOUPMENT — SETTING OFF ADVANCES — DAMAGES — BREACH OF CONTRACT.

The provisions of a contract being apportionable, the plaintiff was entitled to sue for the amount which was due at the time when defendant failed to make the payment agreed upon, the defendant being entitled to offset or recoup the amount of advance in excess of the contract provisions under such notice of general issue, set-off and recoupment and to recover for such breaches by plaintiff as were pleaded and proved.

Error to Manistee; Withey, J.  Submitted Novem-

ber 12, 1914. (Docket No. 65.) Decided April 6, 1915. Rehearing denied July 23, 1915.

Assumpsit by Manistee Navigation Company against E. Golden Filer and others for breach of a special contract. Judgment for plaintiff. Defendants bring error. Affirmed.

*Watts S. Humphrey* and *Humphrey, Grant & Humphrey* (*P. T. Glassmire,* of counsel), for appellants.

*Thomas Smurthwaite* and *Max E. Neal,* for appellee.

MOORE, J. This suit is on a written contract between the plaintiff company and various lumbermen in Manistee and vicinity who had been lumbering on the Manistee river for a number of years. The purposes of the plaintiff company and certain portions of the contract which is the subject matter of this litigation are stated in the opinion of this court in the case of *Manistee Navigation Co.* v. *Sands Salt & Lumber Co.,* 174 Mich. 1 (140 N. W. 565), which case was reversed and sent back for a new trial.

The plaintiff company, on the 23d day of June, 1905, entered into a contract with the defendant company and the other named log owners, who had been driving logs on the Manistee river for a great many years, for the purpose of raising, driving, and delivering the sunken and deadhead logs in the Manistee river to the mills of the various log owners for a price agreed upon between them, as appears in the contract. The plaintiff built and equipped two scows with hoisting machinery in 1905, and began its work of lifting the logs under the contract that fall. During the season of 1906 four more scows were built, and in the season of 1907 two more scows were put in operation,

making in all eight. In 1908 two were burned by the forest fires which prevailed that year, and they were not rebuilt. So in 1909 six scows were operated.

The logs lifted in 1905, which were sufficiently dried out for that purpose, were driven down the river and delivered in the summer of 1906, and after 1905 logs were lifted and a drive was made each year, including 1909, when the plaintiff, in the fall of that year, ceased its operations, owing, as it claims, to the continued failure and refusal of the defendant and the other parties to the contract to pay it the balance of the contract price for logs delivered that year and prior years.

A verdict was had in the instant case for the plaintiff in the sum of $1,219.54, judgment being had thereon, and the case is brought here by writ of error. The questions raised by the 73 assignments of error have been conveniently grouped by counsel for appellants as follows:

(1) The court erred in refusing to allow the defendant to prove that the plaintiff company had never received a dollar from its stockholders, to whom its certificates of stock were issued without consideration, and that said company was without financial standing, as bearing upon the question of the plaintiff's right to maintain its suit upon this executory contract on the claimed breach of contract by defendant for its failure to pay the bill against it of December 2, 1909, found in the record at pages 62 and 63.

(2) The court erred in the admission of evidence and in permitting the jury to render a verdict for plaintiff for interest charged against the defendant on claimed balances, which included damages, and without any previous demand having been made therefor.

(3) The court erred in permitting evidence to be introduced, over defendant's objection, as to the meaning of the words "fair and equitable scale according to Doyle's rule," as contained in said con-

tract, and in submitting said question to the jury to be determined by them as a question of fact.

(4) The court erred in receiving evidence and in allowing the jury to render a verdict in excess of the amount shown by the boom company's scale and the inspection agreed upon under the contract, without showing any fraud or gross mistake in such agreed scale or inspection.

(5) The court erred in its ruling that the defendant's failure to pay the bill of December 2, 1909, constituted a breach of the contract sued upon, when the undisputed evidence shows that both plaintiff and defendant then knew that, through plaintiff's fraudulent conduct, said bill was largely in excess of the amount due (if anything was due) from plaintiff to defendant.

(6) That, the evidence being undisputed that the plaintiff was guilty of frequent and continuous breaches of this executory contract, the court erred in permitting the plaintiff to sue and recover under the express terms of the contract, for the money claimed to be due thereon from the defendant to the plaintiff.

(7) That the court erred in permitting the plaintiff to abandon this executory contract in 1909 (which by its terms was not to be completed until September 1, 1913), and to sue and recover on said contract the contract price for said work after the contract had been breached and abandoned by the plaintiff.

(8) The court erred in rulings regarding evidence, and should have directed a verdict in favor of the defendant, for the reason that no evidence was introduced in the case showing or tending to show the value to the defendant of the services claimed to have been performed by the plaintiff under the contract, or the value of the benefit the defendant had received therefrom, and that there was no basis for a verdict of the jury in favor of the plaintiff and as against the defendant, as it was undisputed that the contract had not been fully performed and completed by the plaintiff, but that it was in default.

I. This very question was raised in the case of *Manistee Navigation Co.* v. *Salt & Lumber Co., supra,* on proper assignments of error, but this court did not discuss it in the opinion therein filed. We did not

then consider, nor do we now, that the refusal of the court to allow inquiry into the financial condition of the plaintiff company was error, for the reason that it was not material or prejudicial to the defendant's rights.

II. With reference to the question of interest raised under this heading, it appears that the contract provides in terms as follows:

"On the 10th day of each month payment to be made for all logs delivered to the respective mills of the said parties of the second part during the preceding month, less any amount that may be due said second parties by reason of the advance money above mentioned."

It thus appears that the contract itself expressly fixes the time when the delivery charges shall be paid, which debt becomes due on the 10th of each month for the deliveries made during the preceding month. Under the terms of the contract, the plaintiff company was entitled to the payment of the money when due, and the general rule of law is that when there is a contract to pay money at a certain time, and the money is not paid when due, interest is recoverable on the amount in default from the date when it should have been paid. 22 Cyc. p. 1539.

III and IV. The contract also provides as follows:

"It is further mutually understood and agreed that all logs scaled under this contract shall be scaled by scalers mutually agreeable to the parties hereto; said scalers to make in all cases a fair and equitable scale, and according to 'Doyle's rule,' and all logs delivered to said second parties' mills are to be scaled by the scalers employed by the Manistee Boom Company; it being understood and agreed that, in the absence of said boom company scalers, then the same are to be scaled by scalers mutually agreed upon between the parties hereto, all logs scaled at the mills to be done without expense to said first party. The scalers employed to scale the logs, when taken out of the waters, flats, or bayous of said stream and its tributaries, are

to be paid one-half by each of the parties hereto; said first party to board said scalers .without cost or charge to said second parties."

It is the contention of defendant's counsel that "said scalers" referred to in this clause of the contract were the scalers that were to make the up-river scale, as the other scalers were agreed upon by the parties in the contract itself and were to be the boom company's scalers, and that therefore the fair and equitable scale provided for referred only to the up-river scale. We do not agree with this construction of the contract, but think it is very clear and evident from the language that it was the intent of the parties that the fair and equitable scale under Doyle's rule was to apply to all logs scaled under this contract, and that the said scalers were to make, in all cases, a fair and equitable scale under Doyle's rule. If it had been the intention of the parties to have limited the fair and equitable scale to the up-river logs upon which the advances were to be made, they could have easily expressed that intention in the clause itself. No other scale is mentioned in the contract but a fair and equitable scale under Doyle's rule, and in our opinion it would do violence to the language of the contract to construe it to mean that a different scale than a fair and equitable one was to apply to the logs delivered.

It is the contention of the defendant that a merchantable scale should be held to apply to the logs delivered, as it was the customary one in use in that vicinity at the time of the making of the contract. The difference between these two scales is commented upon by this court in the case of *Manistee Navigation Co.* v. *Salt & Lumber Co., supra,* where considerable testimony was received as to these two methods of scaling logs. The trial court, in determining to leave to the jury the question as to what the words "fair

and equitable scale under 'Doyle's rule' " meant in the contract here under consideration, gave his reasons as follows:

"Touching the question of the words 'fair and equitable' and 'by Doyle's rule,' as contained in the contract, in view of the testimony on the record, the undisputed fact that, when complaint was made of the log scale, the parties got together and made a supplemental contract which gave the plaintiff a larger scale than they had been getting, and particularly in regard to the testimony, and in view of the fact that the 'merchantable scale' was the recognized scale in this locality—that it is conceded to have given less than the actual contents of the logs in many cases; the testimony of some witnesses that the plaintiff objected all the time to having the logs scaled 'merchantable,' and the further testimony, such as it is, that an understanding between all the log owners, including the defendant in this case, was had before and at the time of the execution of the contract, and as to what the words 'fair and equitable' and 'by Doyle's rule' should mean, and the dispute on that question, I will leave that to the jury to say what these words mean in this contract."

In view of the record thus made, we are of the opinion that it was not error for the judge to leave this question to the jury.

V. In the *Sands Case, supra,* the so-called several breaches of the contract by the plaintiff were the same as in the case at bar. A statement or demand of December 2, 1909, similar to the one in this case, was in evidence in that case, different only in the amounts therein stated; and it is clear from a reading of the opinion that this court recognized the right of the plaintiff to sue the defendant on this contract under the same circumstances, and also recognized and affirmed the right of the defendant to set off and recoup his damages, if any, for the plaintiff's alleged breaches of the contract. So far as the statement or bill of December 2, 1909, is concerned, it contained

only the balance of the contract price due for the delivery of logs the defendants had received, and no contention can be successfully made that the statement contained any illegal or wrongful charges.

VI, VII, and VIII. In the consideration of the points made by counsel for appellant under these headings, the construction of the contract given by this court in the *Sands Case, supra,* must be borne in mind. It is contended that no action should be permitted on the contract because of the alleged breaches thereof by the plaintiff, and authorities are cited which hold that, where a party fails to comply substantially with an agreement, he cannot sue upon it, but that under the present doctrine he may recover upon the *quantum meruit,* based on such benefits as may have accrued to the other party by part performance. To sustain this contention, the early case of *Allen* v. *McKibbin,* 5 Mich. 449, 454, is cited and commented upon, in which this court, speaking through Mr. Justice CAMPBELL, said:

"Where a party fails to comply substantially with an agreement, unless it is apportionable, the rule is well settled that he cannot sue upon the agreement or recover upon it at all. And under the strict common-law rule he was remediless. But the doctrine has now grown up, based upon equitable principles, that where anything has been done from which the other party has received substantial benefit, and which he has appropriated, a recovery may be had upon a *quantum meruit,* based on that benefit. And the basis of this recovery is not the original contract, but a new implied agreement, deducible from the delivery and acceptance of some valuable service or thing."

It will be noted that this opinion limits the doctrine therein announced to contracts which are not apportionable. It is necessary, therefore, to determine whether the contract here involved can be said to be

an entire and unapportionable agreement.  Beach, on the Modern Law of Contracts, says:

"A familiar and well-settled principle of the common-law is that an entire contract cannot be apportioned.  The good sense and reasonableness of the particular case must always guide and govern courts in determining whether a contract is divisible or entire.  The question depends, to some extent, upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract.  No precise rule can be laid down for the solution of the question.  When the price is expressly apportioned by the contract, or the apportionment may be implied by law to each item to be performed, the contract will generally be held to be severable."  Section 731.

According to 2 Elliott on Contracts, § 1543, the authorities generally hold that the question whether a contract is entire or several depends largely upon the intention of the parties.

In our opinion, there can be no doubt as to the severability of this contract.  It provides, in terms, that:

"On the 10th of each month payment (is) to be made for all logs delivered to the respective mills of said parties of the second part during the preceding month, less any amount that may be due said second parties by reason of the advance money above mentioned."

We are of the opinion that, as the logs were delivered, so much of the contract was performed, and on the 10th of the month a certain amount became due and payable to the plaintiffs.  It is quite apparent from the contract itself, and from this record, that this provision in the contract was placed therein so that the plaintiff company might receive the necessary funds to carry on its operations as the work progressed, and it is the plaintiff's claim that the failure of the defendants to pay the amount claimed

to be due would and did result in serious embarrassment to it in the prosecution of the work.

It is true that there was a misunderstanding between the parties as to the construction of the contract in regard to the advances which were made on the up-river scale, but this question was definitely determined against the contention of the defendant by this court in the *Sands Case, supra;* it being held that the millmen could deduct only the advances from the contract price due on the logs delivered. And this construction must be said to bind the parties from the inception of the contract. This disagreement as to the construction of the contract led to negotiations between the parties, and resulted in an advance in 1908 by the log owners to the plaintiff of $15,000, without prejudice to the claims of either of the parties. (This is discussed at some length in the *Sands Case.*) But in 1909, upon the failure on the part of the defendants to pay the amount claimed to be due for logs delivered, the plaintiffs refused to proceed further under the contract until such amounts claimed to be due were paid, which immediately resulted in the litigation and the construction of the contract by this court in the *Sands Case.*

As we have concluded that the contract is an apportionable one, in our opinion it follows that the plaintiff had a right to bring suit for the amount claimed to be due in 1909 for logs delivered; and the defendants, having pleaded the general issue and having given notice of set-off and recoupment, had the right to show that they had overpaid the plaintiff for logs raised and skidded, and set off the excess against the amount due the plaintiff, and also to show breaches of the contract by the plaintiff and recover their damages, if any there were. These questions were questions of fact, and were submitted to the jury with proper instructions.

Being satisfied that the case was tried without prejudicial error, we affirm the judgment of the court below.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.