STEVENSON *v*. BROTHERHOODS MUTUAL BENEFIT.

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—DISCHARGE—
JUSTIFICATION—PERFORMANCE—GOOD FAITH.
Defendant insurer who had hired plaintiff under a 10-year con-
tract to act as its field organizer to represent it in procuring
representatives and to handle its sales *held*, justified in dis-
charging plaintiff and canceling the contract about a year
and a half after commencement where at that time he was
failing to perform and not making a good-faith effort to per-
form his work for defendant.

2. CONTRACTS—CONSTRUCTION AS ENTIRE OR SEVERABLE.
The question of whether a contract is entire or is to be regarded
as severable is a question of construction.

3. SAME—CONSTRUCTION AS ENTIRE—INTENT—CONSIDERATION.
A contract is entire when its terms, nature and purposes show
that it is contemplated and intended that each and all of its
parts, material provisions and the consideration are common
each to the other and interdependent.

4. SAME—CONSTRUCTION—INTENT.
Whether or not a contract is entire or divisible depends on the
intention of the parties and the intention is to be ascertained
from the language used, the subject matter of the contract
and from a consideration of all the circumstances.

5. SAME—CONSTRUCTION AS SEVERABLE—APPORTIONMENT OF PRICE.
When the price is expressly apportioned by the contract, or the
apportionment may be implied by law, to each item to be per-
formed, the contract will generally be held to be severable.

6. SAME—INSURER'S FIELD ORGANIZER EMPLOYMENT—DISCHARGE—
COMMISSIONS.
Contract of employment as field organizer for defendant mutual
insurance company whereby plaintiff was to be paid $5 com-
mission on each application for membership and a 5 per cent.

---

What is a divisible contract, see 1 Restatement, Contracts, § 266(3).
Partial performances concurrently conditional, see 1 Restatement,
Contracts, § 268.
Partial breach of a divisible contract, see 1 Restatement, Contracts,
§ 316; see, also, 2 Restatement, Contracts, § 487.
Speculative profits as damages, see 1 Restatement, Contracts, com-
ment c.

renewal commission computed on each renewal each year was, under the circumstances, a severable contract and entitled plaintiff to commissions due at the time of his discharge.

7. EVIDENCE—WRITTEN CONTRACT OF EMPLOYMENT—AMBIGUITY—PAROL TESTIMONY.

In action by field organizer under written contract of employment with mutual insurance company providing defendant would pay plaintiff a 5 per cent. renewal commission "on each application received" and that "the 5 per cent. renewal is to be paid on each policy at the end of its fiscal year, starting with June, 1942," it was necessary to consider plaintiff's letter accompanying his proposed form of contract, as contract was ambiguous.

8. CONTRACTS—DISCHARGE FROM EMPLOYMENT—INSURANCE FIELD ORGANIZER'S RENEWAL COMMISSIONS.

Under contract of employment of mutual insurance company's field organizer whereby he was entitled to a 5 per cent. renewal commission at the end of its fiscal year, plaintiff was entitled to such commission, based on the preceding year's premium on all policies renewed prior to discharge, and the discharge, even for cause, could not defeat his right to recover amount due therefor at time of discharge.

9. DAMAGES—EVIDENCE—ESTIMATED LOSS OF PROFITS.

In action by mutual insurance company's field organizer for commissions due at time of his discharge wherein defendant by way of set-off and recoupment asserted a claim for damages resulting from his alleged breach, evidence *held*, insufficient to establish damages for estimated loss of premium income; such damages being too uncertain and speculative to be capable of definite ascertainment.

10. CONTRACTS—DAMAGES—PROFITS.

In actions on contract, where the profits are in their nature contingent on opportunity, successful operation, and other uncertain happenings, courts are loath to allow them to be considered as elements of damage.

11. APPEAL AND ERROR—FINDING OF COURT—NONJURY LAW CASE—PREPONDERANCE OF EVIDENCE.

In cases tried without a jury the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to and his finding will not be reversed unless the evidence clearly preponderates in the opposite direction.

12. Contracts—Insurance Field Organizer's Commissions—Insurer's Estimated Loss of Profits—Evidence.

In action by field organizer of mutual insurance company for commissions due at time of discharge wherein defendant sought to recover damages for estimated loss of premium income because of plaintiff's alleged failure to use his best efforts, judgment for plaintiff *held*, not against the clear preponderance of the evidence.

13. Appeal and Error—Judgment—Commissions of Mutual Insurer's Field Organizer.

Judgment entered for plaintiff in action by mutual insurance company's field organizer for commissions due at time of discharge is affirmed in amount for which entered although it did not include commissions during last fortnight before discharge, where he has not appealed.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 10, 1945. (Docket No. 29, Calendar No. 42,915.) Decided June 29, 1945.

Assumpsit by John R. Stevenson against Brotherhoods Mutual Benefit, a Michigan corporation, for commissions due under contract of employment. Judgment for plaintiff. Defendant appeals. Affirmed.

*Anthony Maiullo,* for plaintiff.

*Julien Winterhalter* (*Echlin & Lendzion,* of counsel), for defendant.

Starr, C. J. Defendant was incorporated July 10, 1941, for the purpose of insuring railroad, street railway, and bus company employees against loss of wages caused by discharge or suspension. Its organization was promoted by plaintiff and Roy W. Scott, both of whom had previously been employed by the Conductors Protective Association, which was also engaged in issuing job insurance to railroad employees. As a prerequisite to obtaining a charter, it was necessary for the organizers of defend-

ant company to obtain at least 300 applications for insurance, and it appears that plaintiff and his agents obtained such applications. On June 9, 1941, prior to the organization of the company, plaintiff wrote Mr. Scott, enclosing a suggested contract between himself and the company. His letter outlined by examples how his commissions on membership applications and renewals thereof would be computed and paid. The contract proposed by plaintiff, as revised by Scott and defendant's attorney, was executed July 22, 1941. It provided in part:

"The Brotherhoods Mutual Benefit of Detroit, Michigan, hereby agree to employ John R. Stevenson, of Battle Creek, Michigan, as field organizer to represent their interests in procuring representatives in the field and to handle Brotherhoods Mutual Benefit sales.    *    *    *.

"In order to compensate John R. Stevenson for his time and efforts in his representative capacity as field organizer, the Brotherhoods Mutual Benefit agree to pay John R. Stevenson as here specified:

"Five dollars commission on each application received at the home office from the territory assigned to said field organizer; five per cent. renewal on each application received for a period of five years.

"This five-dollar commission is to be paid at the rate of one dollar a month for five consecutive months, starting with the sixth month's dues. The five per cent. renewal is to be paid on each policy at the end of its fiscal year, starting with June, 1942.

"It is understood and agreed that this arrangement will be in effect on and after June 1, 1941, and shall continue as long as the said field organizer shall exert his best efforts in his employment, but not longer than 10 years from June 1, 1941."

Following the execution of the contract, plaintiff began work as defendant's representative and field organizer in the territory specified in the contract.

He continued until January 15, 1943, when defendant discharged him and canceled the contract. He then began the present suit to recover commissions alleged to be due him under the contract. In its answer defendant denied liability and, by way of set-off and recoupment, claimed damages for alleged breach of contract by plaintiff. On trial without a jury the court awarded plaintiff judgment of $4,276.52, and denied defendant's claim for damages. Motion for new trial was denied, and defendant appeals.

Plaintiff, traveling by auto and house-car trailer, worked as defendant's field representative and organizer, principally among the employees of the Union Pacific railroad, until about August 1, 1942. He then returned to Detroit, where defendant maintained its office, claiming that it was impossible for him to travel and work in the field because of shortage of tires and gasoline. Thereafter, until his discharge, he spent some time in defendant's office and corresponded with agents whom he had appointed. Plaintiff had been made vice president of the company, and after his return to Detroit trouble arose between him and Mr. Scott, who was then treasurer and manager. Much of the voluminous record is devoted to conflicting testimony relative to the trouble between plaintiff and Scott. It appears that defendant was insisting that plaintiff return to his field work among railroad employees. Plaintiff claimed that he could not work in the field and that he could successfully direct and handle his work with agents and representatives by correspondence from Detroit. It would serve no useful purpose to discuss in detail the testimony relative to the dispute between the parties. The situation reached a climax in January, 1943, when defendant discharged plaintiff and canceled the contract. It claimed that he had breached the contract by re-

maining in Detroit and refusing to work in the territory assigned to him, and by failing to "exert his best efforts in his employment."

The contract provided that plaintiff was employed as "field organizer to represent their (defendant's) interests in procuring representatives in the field and to handle Brotherhoods Mutual Benefit sales." It was clearly intended that plaintiff would work in the field among the employees of the several railroads specified as his territory. The record indicates that he remained in Detroit after August, 1942, and refused to work in the field. He based his refusal on the tire and gasoline shortage and claimed that he could not travel by train and bus. However, it should be noted that immediately following his discharge in January, 1943, he returned to his former employer, the Conductors Protective Association, and traveled the Union Pacific territory by train and bus. We find no valid excuse for his failure to perform or at least make a good-faith effort to perform his work as a field organizer for defendant. He breached his contract, and defendant was justified in discharging him and canceling the contract.

In his amended declaration plaintiff claimed the specified commission of $5 on each application for membership in defendant company, which he and agents appointed by him had obtained. He also claimed the specified 5 per cent. commission on all renewals of the membership policies which he and his agents had obtained, and he computed such renewal commissions on the premiums paid during the first year. In its answer defendant alleged that plaintiff's breach of the contract barred him from recovery of any commissions.

It was agreed that prior to January 1, 1943, plaintiff and his agents had obtained applications which,

at the contract rate of $5, would have entitled him to commissions of $7,876, not including renewal commissions.  It was admitted that defendant had made monthly payments on account to plaintiff aggregating $4,928.92, and that plaintiff had waived $570.83 of his commissions.  Deducting these amounts from the above sum of $7,876 would leave a balance of $2,376.25.  The parties were in dispute as to how the renewal commissions should be determined under the contract.  An insurance actuary, who audited defendant's records relative to commissions claimed by plaintiff, computed the renewal commissions to January 1, 1943, at the sum of $1,627.79, which was on the basis of 5 per cent. of the first year's premiums.  This amount was added to the above balance of $2,376.25, making a total of $4,004.04, for which the trial court granted judgment, with interest of $272.48.

Defendant first contends that the contract in question was entire and indivisible and that plaintiff's alleged breach barred his recovery of any commissions.  Under this contention defendant argues that plaintiff could not recover under the contract until he had fully performed it.  In 2 Elliott, Commentaries on the Law of Contracts, p. 828, § 1543, it is stated:

"The question of whether a contract is entire or is to be regarded as severable is a question of construction.  A contract is entire when its terms, nature and purposes show that it is contemplated and intended that each and all of its parts, material provisions and the consideration are common each to the other and interdependent.  *  *  *  Whether or not the contract is entire or divisible depends on the intention of the parties.  The intention is to be ascertained from the language used, the subject matter of the contract and from a consideration of all the circumstances."

In the case of *Manistee Navigation Co.* v. *Filer*, 185 Mich. 302, 311, we quoted with approval from Beach on the Modern Law of Contracts, p. 887, § 731, as follows:

"A familiar and well-settled principle of the common law is that an entire contract cannot be apportioned. The good sense and reasonableness of the particular case must always guide and govern courts in determining whether a contract is divisible or entire. The question depends, to some extent, upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject matter of the contract. No precise rule can be laid down for the solution of the question. *When the price is expressly apportioned by the contract, or the apportionment may be implied by law, to each item to be performed, the contract will generally be held to be severable.*"

Under the contract in question, the $5 commission was to be computed on each application for membership. The 5 per cent. renewal commission was to be computed on each renewal each year. Examination of the contract and of the surrounding facts and circumstances convinces us that the contract was severable, and that plaintiff's alleged breach did not bar him from recovery of commissions due at the time of his discharge.

Defendant next contends that the trial court erred in its interpretation of the provisions of the contract relative to the payment of renewal commissions. It argues that under the contract plaintiff would not be entitled to the 5 per cent. commission on a renewed policy until the expiration of the renewal period. Plaintiff contends that the 5 per cent. renewal commission should be computed and paid in the first month of the renewal period on the basis of the premium paid for the preceding year. The contract provided that defendant would pay plain-

tiff a renewal commission of 5 per cent. "on each application received" and that "the 5 per cent. renewal is to be paid on each policy at the end of its fiscal year, starting with June, 1942." This provision regarding renewal commissions is uncertain and ambiguous. Therefore, to determine the intention of the parties it is necessary to consider plaintiff's letter of June 9, 1941, to Mr. Scott, which accompanied his proposed form of contract. It should be noted that the provisions of the contract submitted by plaintiff, relative to renewal commissions, were identical with the provisions of the above-quoted contract, as executed by the parties. In his letter accompanying the proposed contract, plaintiff clearly indicated that renewal commissions would begin in June, 1942, and be computed on the basis of the premium paid for the preceding year. The provisions of the contract in question, when considered in connection with plaintiff's letter and the surrounding facts and circumstances, clearly indicate that the parties intended that when a membership policy was renewed, plaintiff would be entitled to the 5 per cent. renewal commission based on the amount of the preceding year's premium. In other words, plaintiff was entitled to renewal commissions on all policies that had been renewed prior to his discharge, January 15, 1943. By electing to discharge him and cancel the contract, defendant could not defeat his right to recover whatever amount was due him under the contract at the time of his discharge.

By way of set-off and recoupment defendant asserted claim for damages resulting from plaintiff's alleged breach of contract. In its answer defendant charged:

"That because of plaintiff's failure to perform his contract and to exert his best efforts in promoting the business of the defendant since the month of

August, 1942, the defendant has sustained great loss and damage in that it had to resort to other means and methods to keep its business going and expended the sum of $2,000 in advertising and in putting on contests among its sales representatives, and had the plaintiff been out in the field performing his contract the defendant company would have received at least 50 applications for membership and policies per month during the past 16 months which would have earned for the defendant company the sum of $14,400 over a period of one year."

We cannot overlook defendant's inconsistency. It first claimed the right to discharge plaintiff because of his alleged breach of contract, and then asserted claim for damages for loss of his valuable services. The major part of its claim was for the loss of premium income which it estimated plaintiff would have produced if he had performed the contract. We find no competent evidence establishing the damages claimed by defendant. Furthermore, such damages were too uncertain and speculative to be capable of definite ascertainment. In *Rich* v. *Daily Creamery Co.*, 303 Mich. 344, 352, we quoted with approval from *Ludwigsen* v. *Larsen*, 227 Mich. 528, 531, as follows:

"In actions on contract, where the profits are in their nature contingent on opportunity, successful operation, and other uncertain happenings, courts have been loath to allow them to be considered as elements of damage."

We agree with the trial court who said, "If there is a breach there is, in my opinion, no competent evidence of any damage sustained as a result of the breach."

We have repeatedly said that in cases tried without a jury the trial judge may give such weight to

the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the judgment is against the clear preponderance of the evidence. *Allen* v. *Kroger Grocery & Baking Co.,* 310 Mich. 134; *Marquette Lumber Co.* v. *Burke,* 308 Mich. 698. The judgment in the present case was not against the clear preponderance of the evidence.

The judgment entered by the trial court included the agreed balance of $2,376.25 due as commissions on original membership applications received prior to January 1, 1943, and also renewal commissions to that date of $1,627.79. The judgment did not include commissions on original applications and renewal commissions during the period from January 1, to January 15, 1943, on which date plaintiff was discharged. As he has not appealed from the judgment, it shall stand as entered.

The judgment for plaintiff is affirmed, with costs of both courts.

North, Wiest, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred with Starr, C. J. Butzel, J., concurred in the result.