GENESEE MERCHANTS BANK & TRUST
COMPANY *v.* PAYNE.

DECISION OF THE COURT.

**1.** NEGLIGENCE—ACHILLES' TENDON—EQUALLY DIVIDED COURT.
Judgment of Court of Appeals reversing circuit court judgment
in favor of minor whose Achilles' tendon was cut while she was
under defendants' care, reversal being based upon a lack of
evidence of negligence of defendants, is affirmed by an equally
divided Supreme Court.

SEPARATE OPINION FOR REVERSAL.

T. M. KAVANAGH, J.

**2.** APPEAL AND ERROR—NONJURY CASES—EVIDENCE.
*The trial court in a nonjury action may give such weight to the
testimony as in his opinion he feels it should receive, and an
appellate court, in reviewing, does not consider the case de
novo and should not reverse unless the judgment is against the
clear preponderance of the evidence.*

**3.** SAME—WEIGHT OF EVIDENCE.
*Weight given to and inferences to be drawn from exhibits and
testimony are for the trial judge in a law case tried without
a jury, not an appellate court.*

**4.** NEGLIGENCE—EVIDENCE—UNSAFE PREMISES.
*Judgment entered pursuant to trial judge's findings in favor of
guardian of 6-year-old girl who severed her Achilles' tendon*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 3] 4 Am Jur 2d, Appeal and Error § 515 *et seq.*
[4, 10] 38 Am Jur, Negligence § 92 *et seq.*
[5] 23 Am Jur 2d, Depositions and Discovery § 106.
[6] 38 Am Jur, Negligence § 105 *et seq.*
[7] 38 Am Jur, Negligence § 37.
[8] 38 Am Jur, Negligence § 104 *et seq.*
[9] 53 Am Jur, Trial § 1089.

while on defendants' premises is not reversed where the record
showed that she was under the defendants' care and that ac-
cumulated trash in the yard made premises unsafe.

5. Evidence—Depositions.
   Depositions of opposite parties are properly admissible in evidence
   even though parties are in court, for the reason that every
   statement of an opponent may be used against him as an ad-
   mission without calling him.

Separate Opinion for Reversal.
Black, Souris, and Adams, JJ.

6. Negligence—Safe Condition of Premises—Children.
   Owner of premises owes common-law duty to maintain premises
   in condition which is not dangerous and which does not pro-
   duce risk of serious bodily harm, and it is neither controlling
   nor relevant whether a child is on the premises as invitee or
   licensee when the child sustains an injury due to the dangerous
   condition.

7. Same—Retarded Children.
   Knowledge of owners of premises, claimed to be dangerous, that
   6-year-old child was to some extent retarded, increased to an
   extent measurable by the fact finder the degree of care owing
   to the plaintiff child by the owners.

8. Same—Safe Condition of Premises—Question for Trier of
   Facts.
   Whether owners of premises where 6-year-old girl was allowed to
   play maintained their yard in such condition as reasonable
   prudence might dictate was a question for the trier of facts.

Separate Opinion for Affirmance.
Dethmers, C. J., and Kelly, O'Hara, and T. E. Brennan, JJ.

9. Trial—Verdicts and Findings—Inferences—Conjecture.
   The finders of fact in a trial, whether jury or court, are con-
   strained to draw reasonable inferences from established facts
   and may not indulge in conjecture.

10. Negligence—Evidence—Minors—Achilles' Tendon.
    Judgment for plaintiff minor child who cut her Achilles' tendon
    while she was under the care of defendants held, improper,
    where the record fails to show what caused the injury and
    contains no evidence that defendants were guilty of negligence
    in failing to make their premises reasonably safe for their
    visitor.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Fitzgerald and T. G. Kavanagh, JJ. Submitted March 5, 1968. (Calendar No. 17, Docket No. 51,736.) Decided September 25, 1968.

6 Mich App 204, affirmed by an equally divided court.

Complaint by Mary Ann Blaisdell, by her next friend, Marilyn Blaisdell, against Carroll Payne and Margaret Payne for personal injuries sustained while she was in the care of defendants on October 18, 1963. Genesee Merchants Bank & Trust Company, guardian of the estate of Mary Ann Blaisdell, a minor, was substituted as party plaintiff. Judgment for plaintiff reversed by Court of Appeals. Plaintiff appeals. Affirmed by an equally divided court.

*Leitson, Dean, Dean, Abram, Segar & Hart* (*Robert Abram,* of counsel), for plaintiff.

*Robert Taylor* (*Carl M. Riseman,* of counsel), for defendants.

T. M. Kavanagh, J. (*for reversal*). This case is here on appeal from a judgment of the Court of Appeals, which reversed the judgment of the trial court in favor of plaintiff. 6 Mich App 204.

Plaintiff filed a complaint in the circuit court of Genesee county seeking to recover for personal injuries suffered by its ward, Mary Ann Blaisdell, a slightly retarded 6-year-old child, while on defendants' premises.

Defendants Payne agreed to care for Mary Ann and the other Blaisdell children while their mother and father visited another child in the hospital. De-

fendants drove the Blaisdell children to the Payne residence and the children of both families played together in and about the Payne house and yard. Mary Ann severed her Achilles' tendon on some object in the yard. The next day a large, sharp piece of glass (the top of a fruit jar) was discovered in the vicinity in which the injury occurred.

Trial of the matter was before the court without a jury and resulted in a $2,500 judgment in favor of plaintiff. The trial court's opinion read in part as follows:

"The court will find the minor child has sustained personal injuries on October 18, 1963, and on the premises of the defendant at 2226 Lodge road. The court will also find that the plaintiff was invited upon the defendant's premises by the defendant. The court should also find that the defendants owed a duty to this infant plaintiff to maintain the premises in a reasonably safe condition, and to prevent the existence of any situation which the defendants knew or should have known might result in injury.

"The court will also find that it is reasonably foreseeable that broken glass or a number of other objects in the area where the children play can be a hazardous condition.

"From the testimony and also from exhibits 3 and 4 the court will find the *defendants were negligent* in that they allowed a number of articles to remain in the area where the infant was playing, and the court should find for the record that the *defendants' negligence was the proximate cause of the injury involved.*

"The plaintiff may have a judgment in the amount of $2,500, and may tax costs." (Emphasis added.)

Defendants appealed to the Court of Appeals, making two assignments of error. The first assignment was that at the trial the plaintiff introduced discovery depositions of both defendants over an

objection properly made. Defendants assert that these depositions should not have been admitted, since the defendants were present in court.

The second question raised can best be stated in two parts:

(1) What duty did the defendants owe the plaintiff's ward?

(2) Does the record contain evidence which would support the finding that this duty was breached?

The Court of Appeals found the use of the depositions was proper. It found there was no evidence which would support a finding that a duty was breached since the record fails to show what caused the injury. The Court of Appeals reasoned that fact-finders may not indulge in conjecture and that the fact that an accident occurred did not establish negligence, and concluded that the record contained nothing that did establish negligence. That court then reversed the judgment of the trial court. Plaintiff is here on leave granted June 8, 1967. 379 Mich 766.

In *Baith* v. *Knapp-Stiles, Inc.* (1968), 380 Mich 119, 125, 126, this Court stated:

"We have repeatedly held in law cases tried without a jury, that the trial judge may give such weight to the testimony as in his opinion he feels it should receive. In *McCarty* v. *Mercury Metalcraft Company* (1964), 372 Mich 567, 577, we said:

" 'This Court, in reviewing controverted issues of fact in a law case tried without a jury, does not consider the case *de novo* as if it were in equity. *Schneider* v. *Pomerville*, 348 Mich 49.'

"In such cases we do not reverse unless the judgment is against the clear preponderance of the evidence. *Allen* v. *Kroger Grocery & Baking Co.* (1944), 310 Mich 134; *Marquette Lumber Co.* v. *Burke* (1944), 308 Mich 698; *Stevenson* v. *Brotherhoods Mutual Benefit* (1945), 312 Mich 81; *George*

*Wagschal Associates, Inc.,* v. *West* (1961), 362 Mich
676; *Liberty Mutual Insurance Company* v. *City
of Bay City* (1962), 367 Mich 8; *Siller* v. *Laitila*
(1963), 370 Mich 373; *Lud* v. *Sams* (1963), 371 Mich
680; *Insurance Company of North America* v.
*Schuneman* (1964), 373 Mich 394.

"These rules apply equally to the Court of Appeals."

Therefore, the first question before this Court is
whether a judgment in favor of the guardian of a
6-year-old child, who severed her Achilles' tendon
while on defendants' premises, is against the clear
preponderance of the evidence as a matter of law.
The record discloses that the area of defendants'
premises where the plaintiff's ward received her
injury contained: a glass bottle top with other
pieces missing, a broken lamp, cinder blocks, swings,
a roller coaster track, old torn-out metal steps, a
storm window, bicycles, tin tubs, watering hose, a
dilapidated doghouse.

The record further discloses that defendant Carroll Payne took the 6-year-old child to the hospital,
and that the hospital "emergency case record" stated the infant "cut left heel on glass" at the home of
a friend. The location of the glass, as testified to by
defendant Margaret Payne, and the place where the
child was playing when injured, as testified to by
defendant Carroll Payne, were in the same area.
The record shows the 6-year-old child was slightly
mentally retarded, and that defendants had complete control and supervision of her at the time of
the accident. The child testified, "They came over
to our house and took us there, and then I got cut.
I went out doors and got cut." The trial court observed the scar on the injured child's leg. Plaintiff's
exhibits 1 through 4, showing the condition of the
premises, disclose "the jungle" in which the child
was permitted to play. Exhibit 3 is reproduced here.

See *Kroll* v. *Katz* (1964), 374 Mich 364, involving a somewhat similar use of a picture.

(The arrow was added by the Court and designates the place where the child was injured.)

We must hold, as did Justice BLACK in *Barnes* v. *Beck* (1957), 348 Mich 286, 292, that this record discloses arguable testimony and inference supporting and opposing the trial judge's findings as outlined. We are consequently obligated to rule that the judgment entered on such findings passes muster against challenge.

The weight given to and inferences to be drawn from the exhibits and the testimony are for the judge in a law case tried without a jury. We do not reverse unless we find the trial court's decision is against the preponderance of the evidence. Neither can the Court of Appeals.

In the instant case we cannot say the judgment of the trial court was against the clear preponder-

ance of the evidence. The Court of Appeals invaded the function of the trial court as a fact-finder. In so doing, it committed error.

The question dealing with the admission of the depositions of the defendants, even though they were present in court, was correctly decided by both the trial court and the Court of Appeals. *Ruhala* v. *Roby* (1967), 379 Mich 102.

We do not pass upon the liability of the defendant Margaret Payne by reason of the tenancy by the entireties ownership of the property, since the issue was not raised in either the Court of Appeals or this Court.

The order of the Court of Appeals should be reversed and the case should be remanded to the trial court for re-entry of its judgment. Costs to plaintiff.

BLACK, J. (*for reversal*). I think this case is governed by Restatement's view of the duty owing by the possessor of land to "young" children, no matter the status of the latter as invitees, licensees, or trespassers. For the case of a youngster of tender years, even though he is a technical trespasser (which all agree is not the case here), Restatement declares (Restatement, Torts, Negligence, § 339, p 920):

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The fact is that the legal status of this infant plaintiff, said by the trial judge (and tacitly echoed by Division 2, 6 Mich App 204, 208, 209) to be that of an invitee, is neither controlling nor relevant. Whether one or the other, defendants owed the child that common-law duty, demonstrated well by quoted section 339, which was commensurate with all of the circumstances shown in evidence including the nature of the cause of her injury and the little girl's presumptive inability to fully comprehend and hence protect herself from what actually happened.[1] She was both of tender years and "slightly mentally retarded" (quotation taken from hospital record), and it is permissibly inferable that defendants knew all about this prior to the date of injury. She, with her parents and brothers and sisters, had visited several times at the home of defendants. The latter, for the time being on the date of injury, had undertaken whatever responsibility the common law exacted for her well being, if *in fact* there was any such exaction.

Since original section 339 was adopted and promulgated by the American Law Institute that section has been broadened beyond "young" children.

---

[1] The causative fact of injury was established sufficiently by the emergency record made at the hospital. It reads that the child "cut left heel on glass" at defendants' home. Since defendant Carroll Payne took Mary Ann to the hospital for emergency treatment, it is fairly inferable that the foregoing record was made upon his report.

2 Restatement Torts (Second), Appendix (1966), advises under § 339 at p 129:

"This section has been changed from the first Restatement in the following respects:

"1. By eliminating the limitation to 'young' children. There seems now to be general agreement that the age of the child is important only as it bears on whether he does, and can be expected to, realize the risk. There are now a considerable number of decisions in which the rule stated has been applied to children over the age of 13 years:" (Here follow some 4 pages of recent citations).

We need not, of course, go that far for the purposes of this Blaisdell Case. Here we have a 6-year-old child, retarded to some extent and known to be so by defendants. That knowledge increased the degree of care defendants owed to the plaintiff youngster and that degree was measurable only by the fact-finder, not law-finders.

Even as to a trespassing child, this point was made precise in the annotated case of *Doren* v. *Northwestern Baptist Hospital Association*, 240 Minn 181, 190 (60 NW2d 361, 42 ALR2d 921, 929):

"5. Defendants contend that the trial court erred in failing to instruct the jury that Joel Doren 'when he came within the fenced in portion of defendants' property on said date, was a trespasser on the property of the defendant, but inasmuch as Joel Doren was a minor of tender years, the defendant owed to Joel Doren the duty of exercising ordinary care * * * '.

"Under the conditions set forth in Restatement, Torts, § 339, upon which liability attaches in cases of this kind, it is immaterial that the child involved was a trespasser. As stated in *Gimmestad* v. *Rose Brothers Co., Inc.*, 194 Minn 531, 537 (261 NW 194, 196): * * *

" 'They [the children] are trespassers, but, because of their tender years and the consequent lack of perception and responsibility, liability results notwithstanding the trespass.' "

Not long after *Doren* was written this Court ascertained the rights of a 7-year-old boy whose sight of an eye was lost by a driven golf ball (*Lyshak v. City of Detroit,* 351 Mich 230). There I endorsed one of the three opinions which upheld a verdict for the child. The conclusion of that opinion, wherein 3 of us assumed, without deciding, that the child was a technical trespasser, would apply without question to 6-year-old Mary Ann Blaisdell while she was on the premises of the defendants and in direct nearby view of one of them. The conclusion (*Lyshak* at 251):

"Upon these facts, infant plaintiff, even if a trespasser, was a known trespasser. It was not merely to be anticipated that he *might* be there, along with other children. He was there, he was seen, his presence was actually known to the golf professional assigned to the course, Dalrymple, and what Dalrymple knew as to golf course activities, both of his joint principals knew. Under these circumstances the rule of *Herrick* v. *Wixom,* 121 Mich 384, 388 (6 Am Neg Rep 576), is applicable:

" 'Where a trespasser is discovered upon the premises by the owner or occupant, he is not beyond the pale of the law, and any negligence resulting in injury will render the person guilty of negligence liable to respond in damages.' "[2]

So here. Mary Ann, not a trespasser, was legally on the premises of the defendants. She was there temporarily in the care of the defendants. Whether they maintained the photographed portion of the

---

[2] Numerous authorities were cited, in *Herrick,* which amply support this proposition.

sideyard of their home in such condition as reasonable prudence might dictate, with a 6-year-old not used to the area and its condition turned out to play there, was an obvious question for the trier of facts if, as we have been taught for a long time now (*Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 118):

"As a general rule, it cannot be doubted that the question of negligence is a question of fact and not of law [citing numerous cases]."

The Missouri case of *Wells* v. *Henry W. Kuhs Realty Co.,* 269 SW2d 761 was annotated, 47 ALR2d 1048, under the heading "Liability of landowner for injury or death of child caused by cut or puncture from broken glass or other sharp object." There the plaintiffs' complaint was dismissed for failure to state a claim upon which relief could be granted. The decedent, 11 years old, was fatally injured by falling on broken glass in defendant's "hard-by" refuse dump. On appeal counsel for the plaintiffs, admitting that the decedent was not an invitee, insisted successfully that "there are several exceptions to the general rule of nonliability of an owner of land to a trespasser or licensee." The Missouri supreme court, reversing for trial, concluded as follows (p 768):

"In our case, accepting the averments of the petition as true, defendant was maintaining a dump on which it permitted the placing of glass bottles, jars and jugs, 'broken and otherwise.' Aside from the ordinance such refuse could be reasonably considered as dangerous. The dump was in close proximity to a public alley passing through defendant's tract in a thickly populated urban area. Children of the neighborhood habitually resorted to the public alley and to other lanes on defendant's tract of land, and to the western unimproved portion of

defendant's land, for play. Of this defendant had knowledge. There was no sign signaling the presence of the dump containing the broken glass with which plaintiffs' son came in contact and upon which his body was impaled. And the margin or demarcation between the alley and the adjacent 'island' was obscured by dirt and debris washed down by the elements and pulled down by defendant from time to time in previous removals of trash and debris from its dump which, as alleged, was close to the public alley across defendant's land; and the margin was further obscured by weeds which defendant had permitted to grow, uncut. Here plaintiffs' son while engaged in play inadvertently strayed a few steps onto the 'island' and was caused to slip and fall, his body coming into contact with broken glass on defendant's dump."

If this reasoning was right for *Wells,* it is doubly so for Mary Ann's case. She was 5 years younger than the Wells boy and was left for the while to defendants' care, on their premises. As for the annotation proper, the annotator advises under "§ 2. Liability of private landowner" (pp 1049, 1050):

"The number of cases involving the liability of a landowner for injury or death of a child who was cut or punctured by broken glass or some other sharp object is low, so that all the cases dealing with the liability of a private landowner have been treated together in this section, without any attempt to separate them on the basis of factual or legal distinctions. All the cases involve actions based on negligence, with its concomitant aspects of duty of care, proximate cause and contributory negligence. The main factual variation among the cases is in regard to the location of the broken glass or other sharp object, that is, whether it was lying on a vacant lot or a dump, or on the floor of a building, which was the situation in one case.

"Under such varying circumstances, the courts in some cases have reached decisions supporting the liability of the landowner."

*To summarize:* It appears to this writer that the distinctive facts of Mary Ann's case render wholly inane this hypertechnical argument that she was and she wasn't an invitee of the defendants. See the thoughtful examination Harper and James, and Prosser, have made of this subject of duty on the part of owners and occupiers of land to invitees, licensees and trespassers, particularly young children. 2 Harper & James, Torts, ch 27; Prosser, Torts (2d ed), ch 15, § 76, p 440. To Mary Ann the common-law duty of ordinary care under all of the circumstances known to defendants, and shown in evidence, was owing. The identity and ascertainment of that duty, and the question whether it was actionably breached by the defendants, were for the fact-trier, not for one of our matter-of-law pigeonholes labeled "invitee" or "licensee." This is the case of an infant, not that of an adult or a presumptively knowledgeable teen-ager.

I would reverse for reinstatement of the judgment of the circuit court, awarding plaintiff costs of both appellate courts.

Souris* and Adams, JJ., concurred with Black, J.

Kelly, J. (*for affirmance*). Concurring in affirmance of the Court of Appeals' decision, I quote therefrom as follows:

"The record fails to show what caused the injury. From the evidence that glass was found in the area where she had played after the child was cut, it is

---

* The opinions in this case were signed prior to July 1, 1968, the effective date of the resignation of Justice Souris.

tempting to conjecture that the glass caused the cut. But fact-finders, be they jury or court, may not indulge in conjecture. See *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417. They are constrained to draw reasonable inferences from established facts. Reasoning '*post hoc ergo propter hoc*' does not meet this test.

"Also we are shown no evidence that the defendants failed to do something they should have done. What they should have done is settled. They should have used ordinary care to make the premises reasonably safe for their visitor. Wherein did they fail? The fact of the injury does not establish negligence. *Kroll* v. *Katz* [(1965), 374 Mich 364]. The record contains nothing that does." *Genesee Merchants Bank & Trust Company* v. *Payne,* 6 Mich App 204, 209, 210.

DETHMERS, C. J., and O'HARA, and T. E. BRENNAN, JJ., concurred with KELLY, J.