GEORGE WAGSCHAL ASSOCIATES, INC., v. WEST.

1. APPEAL AND ERROR—NONJURY CASES—EVIDENCE.
   The Supreme Court does not reverse the judgment of the trial
   court in a nonjury case, where the record shows there was ade-
   quate testimony to support the finding of the lower court.

2. JOINT ADVENTURES—ENGINEERS—ARCHITECTS—SCHOOL BUILDING.
   Trial court's finding in action by engineering firm against de-
   fendant architect and school district for services rendered, that
   plaintiff and defendant architect were engaged in a joint proj-
   ect in preparation of plans for a proposed high school building
   held, supported by record.

3. CONTRACTS — BUILDING — CONSTRUCTION PLANS — "OVER-EN-
   GINEERING".
   Record in nonjury action to recover for engineering services ren-
   dered by plaintiff in making plans for proposed high school
   held, to support trial court's finding that plaintiff had "over-
   engineered" such plans, where it appears therefrom that costs
   for engineering, electrical, and mechanical phases reached 55%
   of amount previously known to be available for construction,
   a sum which rendered the plans unusable and resulted in em-
   ployment of others who designed and constructed the building
   within the sum available.

4. SAME—ENGINEERS—ARCHITECTS—CONSTRUCTION PLANS.
   An engineer who participates with an architect in a joint project
   of presenting plans to an owner of a building is obligated the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 896.
   Advantage which the original trier of facts enjoyed over re-
   viewing court from opportunity of seeing and hearing wit-
   nesses. 111 ALR 742.
[2] 30 Am Jur, Joint Adventures § 68.
   What amounts to joint adventure. 138 ALR 968.
[3] 43 Am Jur, Public Works and Contracts § 66.
[4] 30 Am Jur, Joint Adventures § 55.

same as the architect to bring in plans which will permit the building to be constructed at a cost not to exceed that which had been set by the owner and of which both the engineer and architect were advised.

Appeal from Wayne; Weideman (Carl M.), J. Submitted January 4, 1961. (Docket No. 19, Calendar No. 48,428.)   Decided March 1, 1961.

Action by George Wagschal Associates, Inc., a Michigan corporation, against Robert J. West, Jensen & Keough, Inc., a Michigan corporation, and others as to whom case was dismissed, for engineering services rendered architect in connection with design of proposed Romeo community high school Judgment for defendants. Plaintiff appeals. Affirmed.

*Fernand W. Miller,* for plaintiff.

*Leslie T. Jones,* for defendants.

Kavanagh, J.   Plaintiff furnished engineering services required in the preparation of certain architectural drawings to be used in the construction of a new high school for the Romeo Community School District. Although the engineering services were furnished, the high school as designed was never built. The bids for construction of the school totaled $842,750. The school district had authorized a bond issue in the amount of $750,000. The plaintiff had been informed, prior to the drafting of the plans, the funds available for construction itself would be approximately $620,000.

Plaintiff brought this law action against architect Robert J. West, individually; Jensen & Keough, Inc., a Michigan corporation; Henry J. Keough, doing business as Jensen & Keough; and the Romeo Com-

munity School District of the Village of Romeo; for the sum of $11,488 allegedly due for services rendered plus interest.

Upon stipulation, an order dismissing the Romeo Community School District was entered May 16, 1957, and a stipulation and order were entered June 24, 1957, dismissing the action as to defendant Henry J. Keough, doing business as Jensen & Keough.

After trial without a jury of the issues as to the remaining 2 defendants, the trial judge found for defendants West and Jensen & Keough, Inc., and entered a judgment of no cause of action.

Motion for new trial was made and denied. Plaintiff appeals.

In November, 1955, the Romeo Community School District employed Jensen & Keough, an architectural partnership, to design a new high school. Keough, operating under the assumed name of Jensen & Keough, undertook performance pursuant to this employment and after having completed approximately 30% of the architectural drawings became physically incapacitated, necessitating his relinquishing the practice of architecture. Keough entered into negotiations with defendant Robert J. West to sell him certain aspects of his architectural practice. West subsequently purchased by contract various phases of Keough's practice. Defendant West was not an engineer and contacted plaintiff to furnish the engineering drawings and specifications necessary to complete the school plans. An agreement was entered into between West and George Wagschal, president and director of plaintiff corporation. Mr. Wagschal directed Ernest M. Tennant, an employee of plaintiff, to attend the school board meeting with Mr. West to discuss the proposed plans and their completion. Plaintiff thereafter operated through Mr. Tennant in pursu-

ance of its part of this undertaking. Tennant with West and others attended the board meeting. Tennant was introduced as a representative of plaintiff. West advised the board he did not have the services of an engineer and consequently Mr. Tennant's office, that is, the plaintiff, would furnish engineering services on the job. These engineering services were to consist in the designing and outlining of electrical, plumbing, heating, air conditioning, and ventilating facilities for the school.

No formal, written agreement existed between plaintiff and defendant West. Under the oral agreement plaintiff was to receive 3% of the lowest bid for the construction of the electrical and mechanical facilities and an additional 1% thereof for field supervision pertaining to the construction itself for its engineering services.

Plaintiff completed its portion of the work, which was included in the defendants' completed plans and thereafter accepted by the school board. The total bid of $842,750 was comprised of: $509,750 for the structural phase of the high school; $67,000 for the electrical phase; and $266,000 for the mechanical phase; thus the total of the electrical and mechanical phases was $333,000, or 39.4% of the total bid, while the structural phase of the bid amounted to 60.6%.

On the basis of approximately $620,000 available for the construction of the school, the structural bid amounted to 80% of the available funds, and the electrical and mechanical aspects would require 55% of the available funds.

Following futile attempts by plaintiff and defendant West to bring the costs within the amount available for the construction, the school board determined to forego their services and employ others to design the school. The newly designed school was subsequently constructed for an amount within the funds available for that purpose.

Defendant West contended plaintiff was guilty of "over-design," a contention disputed by plaintiff. Plaintiff's witnesses contended the building was too large and the facilities required too great to be built with the funds available.

Plaintiff contends that because the school was located in a semi-urban area and outside the limits of the village of Romeo, unusual problems were presented, consisting of extensions of water lines and sewer lines from the village to the school property, extensive yard drainage, water tower and pumps because of inadequate pressure, and installation of a water-softening system. Plaintiff further claimed the school board required certain other installations which plaintiff considered to be more costly to design and install, such as wall-hung water closets as contrasted with floor-mounted water closets, and numerous other installations.

Plaintiff's engineer, Ernest M. Tennant, in charge of plaintiff's phase of the work, testified it would have been impossible to bring the design down to a cost budgeted by the school board. Tennant admitted he knew the amount of the bond issue and the amount available for construction.

At trial it was defendants' position that engineers, having knowledge of the amount a school board or any other municipality has with which to build, must design within the budget or in effect advise the school board the job cannot be done. Defendants contend plaintiff failed to do this.

Appellant's first question is directed to the fact that the judgment of the court was against the clear weight of the evidence. An examination of the appendixes and transcript of the record convinces us there was adequate testimony to support the finding of the lower court. We cannot say we would have arrived at a different conclusion than did the trial

court. Under these circumstances, in the trial of a law case without a jury, we do not reverse.

Secondly, appellant claims the trial court erred in determining that plaintiff and defendant West entered into a joint project, and contends there is absolutely nothing in the record to support this holding of the lower court.

Mr. Tennant, plaintiff's engineer on the job, testified as follows:

"*Q.* You did testify that you consulted with the school board, is that right?

"*A.* That is right. In other words, we felt that we were acting as a part of Mr. West's organization; that when these things were brought in public meeting, at the school board meetings, we considered that these things were acquiesced to by all parties concerned."

From the above and other adequate testimony the trial court properly found the parties were engaged in a joint project.

Appellant further contends the court erred in finding that the mechanical and electrical aspects in the construction of the school should not have been more than 33% of the total construction cost, and if in excess thereof the plans were "over-designed." Plaintiff contends the size of the structure designed and the facilities required by such design and/or by the school board should be taken into consideration in determining whether or not 33% of the total construction cost was a reasonable figure. It also contends that the unusual circumstances of the construction of the school outside the village should be considered.

Both sides presented expert witnesses on this subject. Mr. Dean, a consulting engineer, testified that in "extenuating circumstances" the percentage might be 35%, but that on the average the engineering,

electrical and mechanical costs would run between 25% to 35% of the total cost. He testified there were many things an engineer could have done on this job to reduce the cost. He said he would have kept the engineering, electrical, and mechanical costs below 35% of the total.

Mr. Bobbio, another consulting engineer, testified the costs should run between 30% and 40%, and if they run to 40% something is wrong.

We certainly cannot say that the court erred in holding the job was over-engineered when the figure reached 55% of the amount available for construction.

The only other question which needs an answer is whether the trial court erred in holding the engineering firm which designed the mechanical and electrical plans for construction of the school was legally obligated to present plans with a construction cost within the budget of the school board, regardless of the design of the building and the facilities demanded.

In its opinion denying relief the trial court relied upon *Zannoth* v. *Booth Radio Stations, Inc.,* 333 Mich 233; *Wetzel* v. *Roberts,* 296 Mich 114; *Loyal Order of Moose, Adrian Lodge 1034,* v. *Faulhaber,* 327 Mich 244; and cases cited in the annotation in 127 ALR 410; all of which hold that an architect is obligated to bring in plans which will permit the building to be constructed at a cost not to exceed that set by the owner.

Appellant does not dispute these authorities, but contends that while it is true an architect is obligated in this fashion, no such duty is placed upon the engineer.

We think the trial court was correct in relying upon the rule established in these cases where, as here, the engineer and the architect were engaged in a joint project. In this instance the engineer was

present with the owner school board and the architect throughout the discussions and, therefore, had first-hand information as to the amount of money available for the construction. We think it is bound under these circumstances to the same rule of law.

In view of our holding with reference to the above questions, we do not feel it necessary to answer the other issues raised.

The judgment in the lower court is affirmed, with costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.