## LUD v. SAMS.

1. Brokers—Commissions—Purchaser Ready, Able, and Willing to Go Through With Contract to Purchase Tavern Business.

Whether or not plaintiff broker presented a purchaser who was ready, able, and willing to go through with contract to purchase defendant's tavern business, equipment, and good will, but not the real estate, *held*, a question of fact under record presented in broker's nonjury action for commission, and evidence supported trial court's judgment for plaintiff.

2. Same—Commission—Return of Deposit.

Defendant's contention that plaintiff broker had no authority to return would-be purchaser's $1,000 deposit and thereby forfeit broker's commission *held*, without merit in broker's action for commission for sale of defendant's tavern business, equipment, and good will, but not real estate, where there is evidence showing defendant withdrew his application to have his liquor licenses transferred to the would-be purchasers notwithstanding the liquor control commission had approved them as transferees.

3. Same—Commissions—Tavern Business—Leases—Authority to Transfer Licenses.

Broker was entitled to commission for sale of defendant's tavern business, equipment, and good will, but not the real estate, notwithstanding there had not been prepared a lease of the premises in advance of the license transfer by the attorney of either party to the transaction so as to determine whether there would or would not be disputes as to its terms, where defendant had withdrawn his request to the liquor control commission for authority to transfer liquor licenses to the would-be purchasers.

References for Points in Headnotes

[1]  8 Am Jur, Brokers §§ 174, 175.
[2, 3]  8 Am Jur, Brokers § 219 *et seq.*
[4]  5 Am Jur 2d, Appeal and Error § 839.

4. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVI-
DENCE.

> The Supreme Court does not reverse the judgment of the trial
> court in a nonjury case as against the fair preponderance of
> the evidence unless shown the trial court has committed a glar-
> ing error or has overlooked or ignored crucial testimony.

Appeal from Midland; Holbrook (Donald E.), J. Submitted October 10, 1963. (Calendar No. 29, Docket No. 50,390.) Decided December 2, 1963.

Action by Frank Lud against Arif Sams for broker's commission on securing purchaser for business. Judgment for plaintiff. Defendant appeals. Affirmed.

*Alvin A. Neller,* for plaintiff.

*Weston L. Sheldon,* for defendant.

KELLY, J. Defendant appeals from a judgment entered on October 20, 1962, in favor of plaintiff in the amount of $4,250, plus costs, said judgment being for broker's fees in connection with a sale of defendant's business.

October 21, 1960, plaintiff obtained an exclusive listing to sell defendant's business (Mart Moderne Liquor Store, of Midland, Michigan), equipment and good will, but not the real estate; plaintiff's commission to be 10% of the sale and to be paid by the seller.

On January 27, 1961, plaintiff obtained a signed offer to purchase from one James F. Murphy and, after further negotiations, defendant, on January 28, 1961, also signed and accepted the offer to purchase and Mr. Murphy accepted the counter offer made by defendant: all subject to the successful transfer of the specially designated distributor and

specially designated merchant licenses in the name of the defendant. In addition to the down payment on the business of $8,000, purchaser also agreed to pay cash for the merchandise and alcoholic inventory of about $15,000. A $1,000 deposit was made by the purchaser with the understanding that it was to be returned to him if the agreement was not accepted by the seller, and in the event of the purchaser's default, then the deposit, plus a sum equal to plaintiff's commission should be paid as liquidated damages by the purchaser.

Within a couple of days after the agreement for sale was reached between the parties, Murphy and his wife made application to the liquor control commission for the transfer of the SDD and SDM licenses, and the following day (February 1, 1961) defendant likewise petitioned the liquor control commission for transfer of licenses.

Defendant became dissatisfied with the value put on the merchandise and alcoholic inventory and claimed that instead of the approximate $15,000 it would more nearly reach $22,000; that it would, therefore, take $30,000, or more, cash to consummate the transaction instead of the original estimate of $23,000. Purchaser Murphy disagreed that the inventory value should be $22,000, and at the end of February plaintiff herein and a salesman, together with defendant and an employee, took an inventory of all alcoholic items and arrived at a figure of $16,-859. Defendant claimed it was a "fast count" and that party store items, food, candy, dairy products, meat, et cetera, were not included. No inventory was taken by Mr. Murphy, however, he agreed that the inventory might run in the neighborhood of $16,000 but not over $17,250.

The difference of approximately $6,000 on the inventory value continued to exist, and in the mean-

time the liquor control commission investigated the financial status of purchaser Murphy, the manner in which he intended to obtain loans and give mortgages in order to raise the necessary funds, and approved Mr. Murphy as a transferee.

March 21, 1961, liquor control commission investigator Davis made the following written report to his director of enforcement of the liquor control commission:

### "Transfer of 1960 SDD, SDM Licenses to James and Roberta Murphy

"Arif Sams was contacted by the undersigned on March 20th in reference to this application to transfer ownership of his SDD, SDM licenses. He informed the undersigned that he did not wish to complete this transaction. He stated that the purchase price of this business is not correct and that the realtor did not correctly state the purchase price. He stated that he was asking $8,000 as down payment plus the sum of about $22,000 for the inventory making a total cash outlay by the purchasers of $30,000 at the minimum. According to the realtor the cash price of the inventory was to be only $15,000 which added to the down payment would total $23,000. According to Mr. Sams the purchasers will have to mortgage all they own to raise even $23,000 which will not leave them any money on which to operate the business. He is fearful that they will not be able to operate this business successfully and he may have to take the business back in case of default. He stated that the applicants are in agreement with this and would like to withdraw from this transaction.

> "Respectfully submitted,
> "(sgd.)  CLARE D. DAVIS, Inv."

On March 27, 1961, defendant wrote the liquor control commission to withdraw transfer of his licenses and the ownership of the business because of

684    371 MICHIGAN REPORTS.    [Dec.

"insufficient funds of purchaser," and on April 11, 1961, the liquor control commission sent a letter to defendant and, also, to Mr. and Mrs. Murphy acknowledging the request of defendant for cancellation of the transfer.

A few days after the announced cancellation, plaintiff, upon the request of Mr. Murphy, returned the $1,000 deposit to him. Defendant was advised of the return of the deposit and was requested to pay the commission due plaintiff. When he refused to pay, plaintiff instituted this action.

The court in its opinion, finding that plaintiff was entitled to his commission in having obtained "a purchaser ready, willing and able to go through with his written contract with Mr. Arif Sams," called attention to the fact that the sales amounted to about $25,000 per month and stated:

"It is easy to understand how a person could make the inventory fluctuate as much as 3 to 4 thousand dollars at any 1 time. It is also true that according to the defendant's own figures that his inventory has fluctuated from about $15,000 to over $21,000. * * *

"It would appear to the court that if Mr. Sams is correct in his contention that the inventory was $21,000 at the time of the acceptance of the offer, that he would have noted an exception to the offer to that effect, but he did not. * * * He (Murphy) testified that he was ready, willing and able to comply with his offer, as accepted and modified by the defendant, Mr. Sams. Mr. Sams could have very easily, if he was right in his position that Mr. Murphy could not furnish the amount of money to purchase the inventory, called upon Mr. Murphy to be present with him at any specified time and take a physical inventory of the stock, which would have required Mr. Murphy to complete the transaction. The transaction did not get this far because Mr. Sams, on his own volition, decided that Mr. Murphy did not have enough money to go through with the

transaction. The court believes under the evidence that the purchasers, Mr. and Mrs. Murphy, did have sufficient money to pay for the inventory and pay for the down payment. *  *  *

"Mr. Sams testified that the reason that he canceled was because the $15,000 figure was tremendously low for the inventory, and further that the liquor control commission's investigator or representative, advised him to cancel the authorization, and requested him to write a letter therefor.

"The investigator denied that he had advised Mr. Sams that he should withdraw the transfer, but did say that because Mr. Sams desired to withdraw the application for transfer to Mr. Murphy, that he wanted the letter reflecting that fact. It is evident from the investigator's testimony that Mr. Sams desired, after the agreement was entered into, to cancel the same."

It is evident that the trial court believed the investigator and not Mr. Sams in this regard and we see no reason why we should differ with the trial court's judgment in that respect.

We see no merit to appellant's contention that: "The plaintiff had no authority to return the $1,000 deposit to the purchaser. Thus, he forfeited his commission." Nor do we believe that the court erred in awarding plaintiff a broker's commission because plaintiff did not have "a lease actually prepared in advance of the license transfer by either the owner's attorney or the purchasers' attorney so as to determine whether there would be any disputes or disagreements as to the terms and conditions of the written lease."

Appellant in his brief admits:

"We are mindful that in this appeal in order to warrant a reversal on the ground that the judgment is against the fair preponderance of the evidence, there must be convincing proof that the trial court

has overlooked or ignored crucial testimony and the Supreme Court must be shown glaring error. *Barnes* v. *Beck,* 348 Mich 286."

The judgment is not against "the fair preponderance of the evidence." The court did not overlook or ignore "crucial testimony," and this Court has not been shown "glaring error."

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.