BAITH *v.* KNAPP-STILES, INC.

1. CONTRACTS—BREACH OF CONTRACT—SUBCONTRACTORS.

Record in subcontractors' nonjury action against contractor for construction of low-rent housing project *held*, to support trial court's finding that defendant refused to allow plaintiffs to continue on the job after they had failed to meet a payroll which defendant paid, such refusal constituting the alleged breach of contract relied upon by plaintiff as constituting basis for recovery.

2. SAME—FAILURE OF PERFORMANCE.

He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.

3. SAME—BREACH OF CONTRACT—FAILURE OF PERFORMANCE.

Determination of whether recovery for failure of performance of a contract by a defendant is to be denied plaintiff by reason of a substantial prior breach by plaintiff is tested by factors of (a) the extent to which defendant will obtain the substantial benefit which he could have reasonably anticipated, (b) the extent to which defendant may be adequately compensated in damages for lack of complete performance by plaintiff, (c) the extent to which plaintiff has already partly performed or made preparations for performance, (d) the greater or lesser hardship on the plaintiff in terminating the contract, (e) the wilful, negligent, or innocent behavior of the plaintiff, and (f) the greater or lesser uncertainty that plaintiff will perform the remainder of the contract.

4. SAME—SUBCONTRACTORS' SUBSTANTIAL BREACH OF CONTRACT.

Plaintiff subcontractors' breach of their contract to supply carpentry labor for construction of low-rent housing project to

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 13 Am Jur 2d, Building and Construction Contracts § 101 *et seq.*

[2, 3] 17 Am Jur 2d, Contracts §§ 365, 425 *et seq.*

defendant contractor *held*, so substantial as to preclude re-
covery from defendant, where plaintiffs' failure to meet their
payroll was met by defendant's payment thereof and removal
of plaintiffs from project, where it is found that defendant
would obtain no substantial benefit until the work is com-
pleted, the only adequate compensation for defendant is com-
pletion of the work, plaintiffs had been fully paid for the
duration of their performance, there was less hardship on
them by reason of such payment, the cost of completion was
more than they had coming, their behavior was wilful, and there
was less certainty of performance of the remainder because of
their questionable financial position.

Appeal from Saginaw; Borchard (Fred J.), J.
Submitted Division 3 December 8, 1965, at Lansing.
(Docket No. 188.)   Decided February 9, 1966.   Leave
to appeal granted by Supreme Court April 20, 1966.
See 377 Mich 708.

Declaration by P. Charles Baith and Allen P.
Hensley, doing business as Baith & Hensley Con-
struction Company, against Knapp-Stiles, Inc., for
damages resulting for a breach of contract involving
construction subcontracting.   Judgment for plain-
tiffs.   Defendant appeals.   Reversed and judgment
of no cause for action ordered entered in the Court
of Appeals.

*James M. Collins,* for plaintiffs.

*Warner, Norcross & Judd (Paul K. Gaston,* of
counsel), for defendant.

Quinn, J.   Plaintiffs brought this action for
breach of contract claiming they were removed from
the construction project involved without just cause
and that they were entitled to recover the amount
they would have received if permitted to complete
the contract.   Defendant claimed a prior breach by
plaintiffs justified their removal.   Plaintiffs recov-

ered substantial damages. Defendant appeals and raises six questions for decision.

The first question raised requires a determination of whether or not the record justifies the application of the rule that a party who first breaches a contract is precluded from an action against the other party for nonperformance. The remaining five questions all deal with findings and accounting procedures of the trial judge in reaching decision and need not be more specifically stated.

November 9, 1959, defendant entered into a contract with the city of Saginaw through its housing commission for construction of the low-rent housing project. The contract provided no subcontractor should be allowed to work on the project without prior written approval of the commission. In the spring of 1960, plaintiffs and defendant entered into an agreement under which plaintiffs, as independent contractors, agreed to furnish all labor, power tools, and equipment to complete the carpentry labor as specified in the specifications for the project. For this defendant agreed to pay the plaintiffs $136,170 plus $4.70 per hour for extra jobs. Other pertinent provisions of this agreement were:

"Terms: Net less 10% holdback for all billings received by the first of the month.

"7. * * * Any waiver of strict compliance with the terms hereof by Knapp-Stiles, Inc., shall not constitute a waiver of its right to insist upon strict compliance with the terms of this order thereafter * * *.

"10. On all subcontracts, payment shall be made for work done and material furnished at such intervals as may be agreed in writing between Knapp-Stiles, Inc., and the subcontractor; provided, however, that 10% of the amount of such labor and material payments to be made shall be retained by Knapp-Stiles, Inc., and shall be paid to the subcon-

tractor at such time as the operations covered by this order are completed and accepted by the owner and Knapp-Stiles, Inc."

Plaintiffs were not immediately approved by the commission as a subcontractor, and their employees were placed on defendant's payroll when work commenced under a separate letter agreement between plaintiffs and defendant which provided as follows:

"At such time as approval is received of your operating as a subcontractor, we will then deduct from the total amount of your contract the amount paid out by us to your men. This will include the base rate plus health and welfare benefits, social security, unemployment insurance, and insurance. Tools and equipment will still be furnished by you during this period."

From April 11, 1960, through the pay period of August 15, 1960, defendant carried plaintiffs' employees on its payroll and paid them wages in the amount of $102,377.08. On August 15, 1960, the parties hereto agreed that plaintiffs should pay their employees. They further agreed that because defendant had overpaid plaintiffs on the contract, on the basis of work completion schedule less the 10% retention, defendant's payments to plaintiffs under the contract would be limited to the amount of plaintiffs' payroll until plaintiffs' completed work called for larger payments. The payments under this arrangement were to be kept in a separate account by plaintiffs and were to be used solely for payroll purposes. This arrangement was followed until October 13, 1960, and under it defendant paid a further sum of $27,192.13. In October, 1960, an overpayment by defendant to plaintiffs under this arrangement in excess of $1,800 was discovered. Plaintiffs had used the overpayment for obligations other than labor. Defendant refused to advance

more than plaintiffs' net payroll less the overpayment and plaintiffs were unable to meet their October 14, 1960, payroll. Plaintiffs were granted time to raise the required funds elsewhere, and when this failed, defendant paid plaintiffs' October 14th payroll in the amount of $1,576.90, and the events occurred which resulted in this lawsuit. While there is some dispute in the testimony whether plaintiffs left the job or were not permitted to continue, the record supports the finding of the trial court that defendant refused to allow plaintiffs to continue on the job after October 14, 1960. This is the breach relied on by plaintiffs. Defendant relies on the fact that plaintiffs' inability to meet their payroll of October 14, 1960, was a failure of performance constituting a prior breach of contract which prevents plaintiffs from recovering in this lawsuit.

The rule relied on by defendant is found in *Ehlinger* v. *Bodi Lake Lumber Company* (1949), 324 Mich 77, and is thus stated (p 89): "He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." The facts in *Ehlinger* are similar to those in the case at bar with respect to prior breach by plaintiffs, events leading up to the same and what occurred thereafter. That the rule is generally recognized, see 6 Williston on Contracts (3d ed), § 871, and 2 Restatement of the Law of Contracts, § 397. The question becomes whether plaintiffs' failure to meet payroll on October 14th was a substantial breach. 1 Restatement of the Law of Contracts, § 275, sets forth the standards to apply in answering this question:

"(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

"(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

"(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

"(d) The greater or less hardship on the party failing to perform in terminating the contract;

"(e) The wilful, negligent, or innocent behavior of the party failing to perform;

"(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

Before applying these standards to the case before us, it should be noted that plaintiffs had no money due them from defendant on October 14, 1960. The trial court so found when it determined a further advance from defendant to plaintiffs on October 14, 1960, would have to be from the 10% retention that plaintiffs were not entitled to until their work was completed. Applying the above standards with this fact in mind, we find:

(a) Defendant obtains no substantial benefit until the work has been completed.

(b) The only adequate compensation for defendant is completion of the work.

(c) Plaintiffs have been fully paid for performance to October 14, 1960.

(d) There is less hardship on plaintiffs because they have been fully paid for work to date. They were required to leave the project and the cost of completion of the contract was more than they had coming under it.

(e) The behavior of plaintiffs was wilful.

(f) It is less certain plaintiffs will perform the remainder of the contract because of their questionable financial position.

From this we conclude plaintiffs' breach in not meeting its payroll October 14, 1960 was a substantial breach.

In view of provision number 7 of the contract quoted at the beginning of this opinion, plaintiffs are in no position to say defendant has waived performance by plaintiffs of their obligation to meet the payroll.

The trial court is reversed and a judgment of no cause for action may enter in this court. This result obviates the need to discuss the other five questions raised by defendant. Defendant may recover its costs.

LESINSKI, C. J., and McGREGOR, J., concurred.