## BAITH v. KNAPP-STILES, INC.

### OPINION OF THE COURT.

1. APPEAL AND ERROR—NONJURY LAW CASES—ISSUES OF FACT.

Findings of trial court in a nonjury case that the defendant contractor did not permit plaintiff subcontractors to continue on the job after they failed to meet a payroll which defendant paid, that the defendant was not justified in so doing, and that thousands of dollars were still due and owing plaintiffs under the terms of the contract for extra work and labor, so that an adjustment could have been made for the overpayment *held*, not against the clear preponderance of the evidence where record shows that there was conflicting testimony presented.

2. TRIAL—NONJURY CASES—EVIDENCE—WEIGHT.

The trial judge, in a nonjury law case, may give such weight to the testimony as in his opinion he feels it should receive.

3. APPEAL AND ERROR—NONJURY CASES—ISSUES OF FACT—REVIEW.

Appellate courts, in reviewing controverted issues of fact in a nonjury law case, does not consider the case *de novo* as if it were in equity.

4. SAME—NONJURY CASES—EVIDENCE.

Appellate courts do not reverse the judgment of the trial court in a nonjury case unless the judgment is against the clear preponderance of the evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4, 9]  5 Am Jur 2d, Appeal and Error § 839.
[2]  53 Am Jur, Trial § 1131; 30 Am Jur 2d, Evidence § 1080 *et seq.*
[5–7, 11]  17 Am Jur 2d, Contracts §§ 365, 425–428.
[8]  5 Am Jur 2d, Appeal and Error § 960.
[10]  5 Am Jur 2d, Appeal and Error § 842.

5. CONTRACTS—BREACH OF CONTRACT—FAILURE OF PERFORMANCE—PREVENTION OF FURTHER PERFORMANCE.

> The general rule is that he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.

6. SAME—SUBSTANTIAL BREACH.

> Substantial breach of contract justifying the nonbreaching party in failure to perform, is a breach which has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party.

7. SAME—SUBSTANTIAL BREACH OF CONTRACT.

> Plaintiff subcontractors' breach of an oral agreement in regard to accounting, made subsequent to original contract, *held*, not to be so substantial a breach as to justify defendant in refusing further performance, where plaintiffs' failure to meet their payroll was met by defendant's payment of it and removal of plaintiffs from project, and where there were thousands of dollars due and owing by defendant to plaintiff on the contract so that an adjustment could have been made.

8. APPEAL AND ERROR—REVIEW—REMAND.

> Questions presented to but not passed upon by Court of Appeals would normally be remanded to that Court for determination, but where those questions call for review of facts found by trial court and a reading of the record discloses the trial court's findings are not against the clear preponderance of the evidence, the record does not permit the Court of Appeals to find otherwise and therefore there is no reason to remand to that Court.

DISSENTING OPINION.

DETHMERS, C. J., and O'HARA and BRENNAN, JJ.

See headnote 2.

9. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT—CONCLUSIONS OF LAW.

> *Appellate court may not make findings of fact separate or different from those of the trial judge, but it may come to conclusions of law different from those of the trial judge.*

10. Trial—Evidence—Facts—Conclusions of Law.
    A result reached from the facts in evidence by natural reasoning in the investigation of truth is an ultimate fact, but if resort to the artificial processes of law is needed in order to reach a final determination, the result is a conclusion of law.

See headnote 5.

11. Contracts—Subcontractors' Substantial Breach of Contract.
    Plaintiff subcontractors' breach of their contract to supply carpentry labor for construction of low-rent housing project to defendant contractor held, so substantial as to preclude recovery from defendant, where plaintiffs' failure to meet their payroll was followed by defendant's payment of the payroll and removal of plaintiffs from project.

Appeal from Court of Appeals, Division 3; Lesinski, C. J., Quinn and McGregor, JJ., reversing Saginaw; Borchard (Fred J.), J. Submitted December 5, 1967. (Calendar No. 35, Docket No. 51,427.) Decided March 4, 1968.

2 Mich App 305, reversed.

Declaration by F. Charles Baith and Allen P. Hensley, doing business as Baith & Hensley Construction Company, against Knapp-Stiles, Inc., a Michigan corporation, for damages resulting from a breach of contract involving construction subcontracting. Judgment for plaintiff. Defendant appealed. Court of Appeals reversed and entered judgment of no cause of action. Plaintiff appeals. Reversed.

*James M. Collins,* for plaintiffs.

*Warner, Norcross & Judd (Paul K. Gaston,* of counsel), for defendant.

T. M. Kavanagh, J. Plaintiffs filed a law action in the circuit court to recover damages for alleged

breach of contract. The trial court, sitting without a jury, entered a judgment in favor of plaintiffs in the amount of $10,917.64. Defendant appealed to the Court of Appeals, which reversed the trial court and ordered that a judgment of no cause of action might enter in the Court of Appeals, 2 Mich App 305. Plaintiffs are here on leave granted. (377 Mich 708.)

On November 9, 1959, defendant entered into a contract with the city of Saginaw, through its housing commission, for construction of a low-rent housing project. The contract provided that no subcontractor would be allowed to work on the project without prior written approval of the commission. In the spring of 1960 plaintiffs and defendant entered into an agreement in writing under which plaintiffs as independent subcontractors agreed to furnish all labor, power tools, and equipment to complete the carpentry work as provided in the specifications for the project. For this defendant agreed to pay plaintiffs $136,170 plus $4.70 per hour for extras. Other pertinent provisions of the agreement were:

"Terms: Net less 10% holdback for all billings received by the first of the month.

"7. * * * Any waiver of strict compliance with the terms hereof by Knapp-Stiles, Inc., shall not constitute a waiver of its right to insist upon strict compliance with the terms of this order thereafter. * * *

"10. On all subcontracts, payment shall be made for work done and material furnished at such intervals as may be agreed in writing between Knapp-Stiles, Inc., and the subcontractor; provided, however, that 10% of the amount of such labor and material payments to be made shall be retained by Knapp-Stiles, Inc., and shall be paid to the subcontractor at such time as the operations covered

by this order are completed and accepted by the
owner and Knapp-Stiles, Inc."

Plaintiffs were not immediately approved. by the
housing commission as subcontractors, and their
employees were placed on defendant's payroll pur-
suant to a separate letter agreement between plain-
tiffs and defendant, which read in pertinent part
as follows:

"At such time as approval is received of your
operating as a subcontractor, we will then deduct
from the total amount of your contract the amount
paid out by us to your men. This will include the
base rate plus health and welfare benefits, social
security, unemployment insurance, and insurance.
Tools and equipment will still be furnished by you
during this period."

From April 11, 1960, through the pay period of
August 15, 1960, defendant carried plaintiffs' em-
ployees on its payroll. On August 15, 1960, plain-
tiffs having been previously approved as subcon-
tractors, the parties orally agreed that plaintiffs
should pay their own employees. They further
orally agreed, contrary to the original contract, that
defendant's payments to plaintiffs would be limited
to the amount of plaintiffs' payroll. The payments
under this arrangement were to be kept in a sepa-
rate account by plaintiffs and were to be used solely
for payroll purposes. This arrangement was fol-
lowed until October 13, 1960.

In October, 1960, plaintiffs discovered an over-
payment made to them by defendant in excess of
$1,800, which plaintiffs had inadvertently used. De-
fendant then refused to advance more than plaintiffs'
net payroll less the overpayment. Plaintiffs were
granted one week to raise the required funds locally,
and when this failed, defendant paid plaintiffs'
October 14th payroll in the amount of $1,576.90, and

the events which followed resulted in this lawsuit. There is a dispute in the testimony whether plaintiffs left the job or were not permitted to continue.

In this nonjury trial, the trial court made the following specific findings of fact: (1) defendant did not permit plaintiff to continue on the job; (2) defendant was not justified in so doing; and (3) thousands of dollars were still due and owing plaintiffs under the terms of said contract for extra work and labor, so an adjustment could have been made for said overpayment. The trial court entered a judgment of $10,917.64 for plaintiffs.

The court arrived at the amount of the judgment by taking the contract price of $136,170 and adding $15,831.59 for certain extras which the court found were ordered by defendant and performed by plaintiffs prior to October 14, 1960, for a total contract price of $152,001.59. The court then deducted amounts paid by defendant to plaintiffs and plaintiffs' employees and clerical costs rendered by defendant in behalf of plaintiffs prior to August 15, 1960, totaling $130,963.29. The court also allowed defendant $10,088.16 for carpentry labor needed to complete the contract after October 14, 1960, and $32.50 for clerical changes to complete the contract, totaling $10,120.66, leaving the balance for which judgment was entered.

Defendant appealed to the Court of Appeals. Plaintiffs stipulated defendant was entitled to a further credit for payments made by it in the amount of $1,576.90, reducing the judgment to $9,340.74.

The Court of Appeals determined in its opinion:

"It should be noted that plaintiffs had no money due them from defendant on October 14, 1960. The trial court so found when it determined a further advance from defendant to plaintiffs on October 14, 1960, would have to be from the 10% retention that

plaintiffs were not entitled to until their work was completed." (p 310)

The Court of Appeals then concluded that defendant had not breached the contract and that plaintiffs' alleged breach in not meeting its payroll on October 14, 1960, was a substantial breach entitling defendant to dismiss plaintiffs from the job. It held the trial court should be reversed and a judgment of no cause of action entered in the Court of Appeals.

The Court of Appeals made findings of fact directly contrary to the findings set forth in the opinions of the trial court.

An examination of the record discloses much of the testimony was in conflict. The trial court, however, after weighing the testimony of the witnesses and seeing them testify, concluded: (1) that defendant did not permit plaintiffs to continue on the job; (2) that defendant was not justified in so doing; and (3) that thousands of dollars were due and owing on the contract so that an adjustment could have been made. These findings of fact by the trial court were not against the clear preponderance of the evidence.

We have repeatedly held in law cases tried without a jury, that the trial judge may give such weight to the testimony as in his opinion he feels it should receive. In *McCarty* v. *Mercury Metalcraft Company* (1964), 372 Mich 567, 577, we said:

"This Court, in reviewing controverted issues of fact in a law case tried without a jury, does not consider the case *de novo* as if it were in equity. *Schneider* v. *Pomerville,* 348 Mich 49."

In such cases we do not reverse unless the judgment is against the clear preponderance of the evidence. *Allen* v. *Kroger Grocery & Baking Co.* (1944), 310 Mich 134; *Marquette Lumber Co.* v. *Burke* (1944),

308 Mich 698; *Stevenson* v. *Brotherhoods Mutual Benefit* (1945), 312 Mich 81; *George Wagschal Associates, Inc.,* v. *West* (1961), 362 Mich 676; *Liberty Mutual Insurance Company* v. *City of Bay City* (1962), 367 Mich 8; *Siller* v. *Laitila* (1963), 370 Mich 373; *Lud* v. *Sams* (1963), 371 Mich 680; *Insurance Company of North America* v. *Schuneman* (1964), 373 Mich 394.

These rules apply equally to the Court of Appeals.

The Court of Appeals, relying on the fact that plaintiffs' inability to meet their payroll of October 14, 1960, was a failure of performance constituting a prior breach of contract which prevented plaintiffs from recovering in this lawsuit, applied the rule of *Jones* v. *Berkey* (1914), 181 Mich 472, which was reaffirmed in *Ehlinger* v. *Bodi Lake Lumber Company* (1949), 324 Mich 77, 89:

"He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform."

In the case of *McCarty* v. *Mercury Metalcraft Co., supra,* this Court, after quoting the rule adopted in *Jones, supra,* said (p 574):

"That case and this Court's other decisions on that point indicate that the words 'substantial breach' in the ruling must be given close scrutiny. Such scrutiny discloses that the application of such a rule can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration (*Kunzie* v. *Nibblelink,* 199 Mich 308) or the prevention of further performance by the other party (*Stahelin* v. *Sowle,* 87 Mich 124)."

The instant case does not involve a breach of the original contract, but at most a breach of an

oral agreement in regard to accounting. The trial court specifically found that thousands of dollars were due and owing on the contract so that an adjustment could have been made. The breach of the oral agreement in regard to accounting does not affect an element so essential as to amount to a breach contemplated by the rule as "substantial." Therefore, the rule of *Jones, supra,* reaffirmed in *Ehlinger, supra,* does not bar the plaintiffs' suit.

As the Court of Appeals did not pass on the other questions presented to it by the defendant, we would normally remand the case to that Court for a determination of such questions. However, those questions also call for review of the facts as found by the trial court. As to those fact questions, a reading of the record discloses the trial court's findings are not against the clear preponderance of the evidence. The record would not permit the Court of Appeals to find otherwise; therefore, there is no reason to remand the case to that Court.

The judgment of the Court of Appeals is reversed. The judgment of the trial court, as amended by the stipulation, in the amount of $9,340.74 is affirmed. Plaintiffs shall have costs.

KELLY, BLACK, SOURIS, and ADAMS, JJ., concurred with T. M. KAVANAGH, J.

O'HARA, J. (*dissenting*). Although I disagree with Mr. Justice T. M. KAVANAGH's result, I am in complete accord with his statement "in law cases tried without a jury, * * * the trial judge may give such weight to the testimony as * * * he feels it should receive." Such is the settled law, and of course binds the Court of Appeals.

However, I do not read the Court of Appeals' opinion as contravening that principle. The Court

of Appeals made no *findings of fact* separate or different from those of the trial judge. It did come to *conclusions of law* different from those of the circuit judge, but that is the province of an appellate court on review.

The difference between the two is well expressed by the Supreme Court of California. *Levins* v. *Rovegno* (1886), 71 Cal 273, 275, 278 (12 P 161, 162, 164):

"The line of demarcation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases. * * * If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact, to be found as such. If, on the other hand, resort must be had to the artificial processes of the law, in order to reach a final determination, the result is a conclusion of law."

The circuit judge found that "in October 1960 * * * plaintiffs discovered an overpayment in excess of $1,800." This is a finding of fact. It may be said that the finding by the circuit judge "which lead to plaintiffs' dismissal from this job" is an inference of fact which he was entitled to draw from the previously found fact. However, when the trial court held that "said dismissal was not justified under the circumstances" he left the realm of fact finding and entered into the area of "artificial processes of the law, in order to reach a final determination." Clearly to me this was a conclusion of law. The Court of Appeals recognized the rule contended for by Justice T. M. Kavanagh (2 Mich App 305, 309):

"While there is some dispute in the testimony whether plaintiffs left the job or were not permitted to continue, *the record supports the finding of the*

*trial court that defendant refused to allow plaintiffs to continue."* (Emphasis supplied.)

The Court of Appeals then accepting this finding of fact recites:

"This is the breach relied on by plaintiffs."

The Court of Appeals then goes to the question of plaintiffs' failure of performance "constituting a prior breach of contract which prevents plaintiffs from recovering". The fact relied upon by the Court of Appeals to support this legal conclusion was "plaintiffs' inability to meet their payroll of October 14, 1960." This fact is uncontroverted. Justice T. M. KAVANAGH seems to recognize this by his statement "defendant paid plaintffs' October 14th payroll." If plantiffs had met it, there would have been no occasion for defendant to have done so. The Court of Appeals then applies settled Michigan law to that fact (p 309):

"He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Ehlinger* v. *Bodi Lake Lumber Company* (1949), 324 Mich 77, 89.

Correctly, then, to support its legal conclusion the Court of Appeals goes to the next legal step (p 309):

"The question becomes whether plaintiffs' failure to meet [the] payroll on October 14th, was a substantial breach."

The Court then examines this question in terms of the law of contracts.

Quoting the test of substantiality of breach in 1 Restatement of the Law of Contracts, § 275, the Court applies the test to the case at bar. The Court carefully notes (p 310):

"That plaintiffs had no money due them from defendant on October 14, 1960. The trial court so found when it determined a further advance from defendant to plaintiffs on October 14, 1960, would have to be from the 10% retention that plaintiffs were not entitled to until their work was completed."

The Court of Appeals then makes its eminently proper decisional conclusion of law (p 311):

"We conclude plaintiffs' breach in not meeting its payroll October 14, 1960 was a substantial breach."

This substantial breach, having occurred first, defeats plaintiffs' action alleging breach of the same contract.

I find no error in the decision of the Court of Appeals nor in the process by which it reached it.

The judgment of the Court of Appeals should be affirmed. Cost to defendant appellee.

DETHMERS, C. J., and BRENNAN, J., concurred with O'HARA, J.