# STATE OF MICHIGAN

# COURT OF APPEALS

STUART D. ROEDER,

      Plaintiff/Counter-Defendant-
      Appellee,

v

GLOBAL EXPRESS SERVICES, LLC,

      Defendant/Counter-Plaintiff-
      Appellant.

UNPUBLISHED
June 13, 2017

No.  330874
Kent Circuit Court
LC No.  14-002845-CK

Before:  GADOLA, P.J., and TALBOT, C.J., and GLEICHER, J.

PER CURIAM.

At issue in this case is a commercial property lease.  The landlord sought to retake possession of the building while the tenant sought the right to remain in house for a ten-year period.  The trial court ruled in the landlord's favor and the tenant appeals, raising multiple claims of error.  Because none merit relief, we affirm.

## I. BACKGROUND

Stuart Roeder owns commercial property in Grand Rapids.  On November 7, 2012, Roeder executed a lease with Global Express Services, a company owned and operated by Ashtin Raad and his wife, Linda Akkari.  The lessees opened a restaurant at the site.  The lease term began December 15, 2012 and ran for one year.  Global Express had the option to extend the lease for nine additional one-year terms.  To extend the lease, Global Express was required to notify Roeder in writing not less than 60 days before the lease expired.

Global Express contends that Roeder misrepresented that the building was up to code to serve as a restaurant.  As a result, Global Express was required to make unexpected and expensive renovations to the property.  Global Express then wanted to protect its investment.  Accordingly, Raad claims that he notified Roeder in writing of his intent to extend the lease for the entire 10-year period.  To support this claim, Raad presented a letter dated January 7, 2013.  Roeder denied receiving the letter.  On November 7, 2013, Roeder notified Global Express that its lease would expire December 15 and he expected the tenants to vacate.  Global Express responded by providing the January 7 letter.  Roeder indicated that he had not timely received that notice and the lease term would not be renewed.

-1-

Roeder filed suit seeking possession of the building and accusing Global Express of materially breaching the lease in several ways. Global Express filed a countercomplaint, claiming that Roeder breached its right to quiet enjoyment of the building by placing rental and sale signs in the restaurant's window and placing an Internet ad to sell the building.

As the case proceeded, Global Express exhibited disregard for deadlines set by the court. It belatedly filed an incomplete witness list, leading the court to limit Global Express's trial witnesses to Raad and Akkari. Global Express filed its trial brief late and the court advised that no new evidence would be allowed at trial. Global Express also violated the court's order compelling production of the computer on which its letter to extend the lease was prepared, evidence necessary to resolve the parties' dispute regarding the letter's actual drafting date.

At the conclusion of the bench trial, the court denied Roeder's and Global Express's cross claims for damages related to the other's alleged breaches of the lease. Specifically, regarding Global Express's counterclaim, the court found that Roeder had breached the lease but that Global Express had not proven its damages with reasonable certainty. The court awarded possession of the building to Roeder after determining that Global Express had not sent the renewal letter on January 7, 2013 and therefore that the lease had expired on December 15. The court also awarded Roeder one-half of his attorney fees.

## II. PRESENTATION OF WITNESSES

Global Express first argues that the trial court erred in denying its motion to extend the deadline set forth in the scheduling order for the disclosure of expert and lay witnesses. We review a trial court's decision regarding a motion to extend disclosure dates for an abuse of discretion. See *Decker v Trux R Us, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

A trial court should "enter a scheduling order setting time limitations for the processing of the case and establishing dates when future actions should begin or be completed in the case," MCR 2.401(B)(1)(c), including dates for the completion of discovery and the exchange of witness lists. MCR 2.401(B)(2)(a)(*iii*), (*iv*). The scheduling order in this case required Global Express to disclose its expert witnesses by August 4, 2014, and citing MCR 2.302(B)(4)(a)(*i*), "to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." The order required Global Express to present a list of all lay witnesses 28 days before the close of discovery, which was October 3, 2014. In relation to lay witnesses, the court ordered Global Express to "name each proposed witness, provide an address (residence or business), and state briefly what he or she is expected to say."

On October 9, 2014, after retaining new counsel, Global Express moved to extend the discovery deadline. Global Express asserted that much discovery still needed to be done, including the taking of Roeder's deposition. Global Express also requested that the witness disclosure deadline be extended. At the hearing, however, Global Express identified only its need to depose Roeder in support of its motion to extend the deadlines in the scheduling order. The trial court granted Global Express additional time in which to depose Roeder but stated, "I

don't think otherwise we need to change . . . any dates." The trial court did not abuse its discretion in impliedly denying Global Express's motion to extend the witness disclosure deadline. Global Express never stated a reason necessitating an extension and abandoned this request at the motion hearing by asking only for "permission to take that last deposition."

In a related argument, Global Express challenges the trial court's exclusion of its proffered witnesses at trial. Trial was scheduled for October 5, 2015. On September 4, Roeder filed a preemptive motion to exclude any witness proffered by Global Express as it had yet to file any witness list. Ten days later, Global Express finally filed a list of expert and lay witnesses, but the court excluded their testimony at trial.

"This Court reviews for an abuse of discretion a trial court's decision to bar witness testimony after a party has failed to timely submit a witness list." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162; 792 NW2d 749 (2010). "Once a party has failed to file a witness list in accordance with the scheduling order, it is within the trial court's discretion to impose sanctions against that party. These sanctions may preclude the party from calling witnesses." *Id*. at 164. When deciding how to sanction a party, a court must carefully consider what sanction would be "just and proper" under the circumstances and evaluate the various factors outlined in *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990):

> "(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the [other party]; (4) actual notice to the [other party] of the witness and the length of time prior to trial that the [other party] received such actual notice; (5) whether there exists a history of [the party's] engaging in deliberate delay; (6) the degree of compliance by the [party] with other provisions of the court's order; (7) an attempt by the [party] to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice." [*Duray Dev*, 288 Mich App at 165, quoting *Dean*, 182 Mich App at 32-33.]

It appears that Global Express's failure to timely provide witness lists was likely accidental rather than willful. In response to interrogatories, Global Express identified several potential witnesses. It is likely that Global Express thought these responses complied with the disclosure requirements. However, Global Express did not timely cure its failure to provide witness lists. Global Express waited until two weeks before trial to present actual lists, more than a year after the deadline in the scheduling order, and only did so in response to a motion to exclude. Global Express delayed despite that it had previously sought to extend the deadline for filing its witness lists, belying any claim of ignorance. Moreover, the information regarding potential witnesses produced during discovery was incomplete; Global Express never provided necessary details about the proposed experts' testimony to allow Roeder to adequately prepare for trial.

Global Express also exhibited a history of failing to comply with discovery requests. For example, during discovery, Roeder requested production of the laptop computer on which Raad had drafted the letter requesting extension of the lease. Roeder intended to establish from the metadata connected with the file that Raad had not drafted the letter in January 2013. Raad claimed that he no longer had access to the computer because Akkari had taken it with her on a

-3-

visit to Lebanon and then sold it. When the court ordered Global Express to produce the laptop, Raad presented a computer disk holding the letter and its connected metadata. Raad recently had this information pulled from the computer's hard drive but never adequately explained how he gained access to the computer that had allegedly been sold.

Ultimately, the court determined that Roeder was greatly burdened by the delay in presenting the witness lists. The proceedings had been going on for more than 20 months at that point. Roeder was carrying the financial burden of the delay; Global Express's monthly rent obligation was being paid into escrow rather than to the landlord. And even two weeks before trial, Roeder could not know what Global Express's proffered experts would testify to. Under these circumstances, we cannot conclude that the trial court acted outside its discretion in preventing Global Express's witnesses from testifying at trial.

## III. EXCLUSION OF DOCUMENTARY EVIDENCE

At the onset of trial, Roeder moved to exclude any exhibits proffered by Global Express at trial. Roeder sought this sanction as punishment for Global Express's belated filing of its trial brief. Roeder further accused Global Express of failing to make its trial exhibits available for inspection one week before trial as required by the court; rather, Global Express provided copies of these exhibits to Roeder five days before trial. The court denied Roeder's motion to strike Global Express's trial exhibits. However, the court ruled, "if there are exhibits which have not previously been seen or utilized in these proceedings, I would entertain an objection to their being used in this trial on the grounds of unfair surprise and lack of prior notice."

Global Express challenges the trial court's ruling, but cites no exhibit that was excluded from trial because it had "not previously been seen or utilized in these proceedings." Global Express emphasizes five points during the trial when Roeder raised objections, but identifies no exhibits that were excluded as a result. Indeed, even when the court agreed with Roeder that Global Express had produced no documentation establishing damages prior to trial, Global Express did not attempt to present or even identify any evidence in its possession. As Global Express can point to no evidence that was excluded, there is nothing for this Court to review.

## IV. INTERPRETER

Akkari is from Lebanon and speaks limited English. Accordingly, on the first day of trial, Global Express requested that the court appoint an interpreter for her. The judge advised Global Express to contact the clerk's office for assistance in securing a certified interpreter. On the third trial day, Global Express informed the court that "an interpreter, who is court certified" would arrive at 11:00 a.m. Akkari testified that day with the interpreter's assistance.

On the fourth day of trial, counsel for Global Express placed "commentary" on the record regarding the interpretation of the previous day:

> And I did want to make one commentary regarding the translator yesterday. And that was a translator that was provided by the court. I don't know that he really translated verbatim as required what he was supposed to - - everything that Ms. Akkari said. He had conversations with her, and then he kind of reported what she said.

> And I think the gist of what she said came out. I just wanted for the record to note that it wasn't a verbatim translation. And we - - we contacted the office here at the court that provides translation services, and they indicated that I guess he wasn't, quote unquote, "certified," but he was the one that was available for - - for us that the court provided. So I just wanted to note that for the record.

Global Express did not request that Akkari be allowed to testify again with a replacement interpreter. On appeal, Global Express presents an affidavit from Raad comparing his translation of Akkari's testimony to that of the interpreter. If accurate, this affidavit demonstrates that the interpreter's translation was clumsy, but not necessarily inaccurate. Just as counsel indicated at trial, the affidavit supports that the interpreter's translation was not word-for-word, but the "gist" of Akkari's statements was conveyed.

The parties later learned that the interpreter was not certified or properly qualified to translate the proceeding. But Roeder raises no argument in this regard. Instead, he posits that Global Express waived any challenge by selecting this interpreter and by failing to immediately object during Akkari's testimony. However, Global Express selected the interpreter used at trial because the court clerk provided his name as someone qualified to provide translation services. Counsel advised the court of the interpreter's shortcomings as soon as he could after discussing the issue with Raad, who speaks both Arabic and English.

And the trial court—the clerk's office acting in conjunction with the trial judge—violated the court rules governing the appointment of interpreters. MCR 1.111(B)(1) requires the court to appoint "a foreign language interpreter" upon request if "necessary for the person to meaningfully participate in the case or the court proceeding." An interpreter appointed by the court must be "a certified foreign language interpreter whenever practicable." MCR 1.111(F)(1). A "certified interpreter" is one who has "passed a foreign language interpreter test" approved by SCAO, meets all criteria established by SCAO for interpreter classification, and is registered with SCAO. MCR 1.111(A)(4). "If a certified . . . interpreter is not reasonably available, and after considering the gravity of the proceedings and whether the matter should be rescheduled, the trial court may appoint a qualified foreign language interpreter." MCR 1.111(F)(1). A "qualified . . . interpreter" is a "person who provides interpretation services" or who works for an interpretation service and meets SCAO requirements to be classified as an interpreter. MCR 1.111(A)(6). Only if neither a certified nor qualified interpreter is reasonably available may the court consider appointing someone else. Before doing so, the court must "determine[] through voir dire" that the person "is capable of conveying the intent and content of the speaker's words sufficiently to allow the court to conduct the proceeding without prejudice to the limited English proficient person." MCR 1.111(F)(2).

It appears that Global Express did not know until after Akkari testified that the interpreter was neither certified nor qualified under the court rule. Because the clerk's office withheld information, Global Express lacked the knowledge it needed to ask the judge to conduct voir dire. As a result of the court's own errors, Global Express did not know before Akkari testified whether the interpreter was "capable of conveying the intent and content of the speaker's words sufficiently to allow the court to conduct the proceeding without prejudice" to Akkari.

The court's error was harmless, however. See MCR 2.613(A). Global Express admitted at trial that the substance of Akkari's testimony was conveyed. Our review of Raad's affidavit retranslating Akkari's testimony supports that statement. Accordingly, Global Express was not prejudiced and a new trial is not warranted.

## V. ADVERSE INFERENCE

As noted, Roeder requested production of the laptop computer on which Raad allegedly drafted his January 7, 2013 letter notifying Roeder of Global Express's intent to extend its lease. The trial court ordered the laptop's production and Global Express did not comply. Global Express contends that the trial court improperly made an adverse presumption that metadata on the laptop would have established that Raad actually drafted the letter in November 2013 in response to Roeder's eviction notice.[1]

Following a bench trial, the court must find the facts, state its conclusions of law, and direct entry of an appropriate judgment. MCR 2.517(A)(1). Here, after hearing all the evidence, the court found that the subject letter was not mailed in January 2013. The trial court based its finding on three factors: (1) there was no credible reason for Global Express to extend the lease only one month after it had taken possession of the building as notice to extend was not required until October 2013; (2) the letter was never mentioned in any subsequent correspondence between Roeder and Raad; and (3) the floor plan, which Raad testified he sent with the renewal letter, had never been folded to fit into an envelope. The trial court did not rely on any adverse inference against Global Express based on its failure to produce the laptop. Accordingly, Global Express's complaint is without merit.

## VI. LEASE RENEWAL

Global Express also challenges the trial court's conclusion that it did not renew the lease for nine additional one-year terms. Following a bench trial, we review a trial court's conclusions of law de novo and its factual findings for clear error. *Waisanen v Superior Twp*, 305 Mich App 719, 723; 854 NW2d 213 (2014). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

As noted, the court first surmised that there was no credible reason for Global Express to extend the lease for nine additional years only one month after it had taken possession of the building as notice to extend was not required until October 2013. Raad testified that he and Akkari decided that Global Express would extend the lease for nine years because of the extent of work needed to bring the restaurant up to code. Extending the lease for the full 10 years, Raad asserted, protected Global Express's investment and provided Roeder assurances that the renovations would not be in vain. Raad also claimed that Roeder had made comment about

---

[1] Global Express actually contends that the court improperly gave a spoliation of the evidence instruction to the jury. This was a bench trial, and so the proper inquiry is whether the court made the inference permitted by the instruction.

selling the building. By extending the lease, Global Express could protect its legal right to retain possession after the sale. Although these explanations seem reasonable on paper, the trial court had the best opportunity to view Raad's demeanor and assess his credibility. See *Stoudemire v Stoudemire*, 248 Mich App 325, 339; 639 NW2d 274 (2001). Questions of credibility and intent are for the trier of fact. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 174; 530 NW2d 772 (1995). We will not second guess the court's finding in this regard.

The trial court next opined that the lease renewal letter was not actually sent in January 2013 as the parties were in constant contact via email at that time and yet the letter was never mentioned. As Roeder disputed that the lease allowed Global Express to renew the lease for a nine-year term, rather than year-to-year, the court found it likely that Roeder would have clarified the lease terms if he had received the letter. Raad presented no email in which he discussed the renewal letter with Roeder and we discern no ground to interfere with the court's assessment of the facts.

At trial, Raad testified that he folded a floor plan for the building and placed it in the envelope with the renewal letter. The final reason cited by the court for finding that the letter was not actually mailed in January 2013 is that the floor plan presented by Raad as the one he mailed to Roeder (and later reviewed in person with Roeder) did not appear to have been folded at any point in time. We have reviewed a photocopy of this trial exhibit. There appears to be a single fold line approximately one-third down the page, but there are no other apparent fold lines on the paper. Accordingly, we cannot conclude that the trial court clearly erred in finding that Raad did not send the letter in January 2013. As notice was not timely sent, Raad did not renew Global Express's lease for a second year and Roeder was entitled to retake possession of the building. Given this conclusion, we need not consider the trial court's alternate ground for ruling in Roeder's favor—that the lease only allowed Global Express to renew the lease for nine additional one-year terms, not for one nine-year term.

## VII. ATTORNEY FEES

Finally, Global Express challenges the trial court's grant of attorney fees to Roeder. Global Express contends that as Roeder breached the lease, he could not enforce the lease's attorney-fee provision. The interpretation of a contract and the legal effect of its provisions are questions of law reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005); *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

Michigan follows the "American rule" regarding the payment of attorney fees and costs. *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005). Under this rule, a party is required to pay its own attorney fees unless a statute or court rule authorizes otherwise. *Id.* at 707. Parties may also contractually agree to shift attorney fees. *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194; 874 NW2d 367 (2015). Because the trial court's authority to award fees arises from the contract, the award is a type of general damages. *Id.*

The lease provided that "[i]f Landlord commences an action to enforce this Lease, Tenant agrees to pay Landlord's reasonable costs and attorney fees." Roeder leased the building to Global Express for one year. The lease began on "the Commencement Date and expire[d] on the Termination Date, unless otherwise terminated or extended as provided in this Lease." To

extend the lease, Global Express was required to notify Roeder in writing not less than 60 days before the lease terminated. Thus, Global Express only had the right to possess the building past the termination date if it gave timely written notice of its intent to extend the lease. Global Express did not give timely notice of its intent to extend the lease and yet refused to vacate, leading Roeder to file this action "to enforce" the lease. Therefore, the attorney-fee award was authorized under the contract as an element of damages.

Global Express contends that the award was not permitted despite the contractual provision. A party who first commits a substantial contractual breach cannot maintain an action against the other for its subsequent breach or failure to perform. *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). "[T]he application of such a rule can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Baith v Knapp-Stiles, Inc*, 380 Mich 119, 126; 156 NW2d 575 (1968) (quotation marks and citations omitted). To succeed in its challenge to the attorney-fee provision, Global Express would have to show that Roeder's act of temporarily placing a for-sale sign in the restaurant's window completely prevented Global Express from operating its restaurant. The restaurant remained open and Global Express tied no lost profit to Roeder's actions. Accordingly, Global Express cannot avoid the award of attorney fees.

We affirm. Roeder, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Michael F. Gadola
/s/ Michael J. Talbot
/s/ Elizabeth L. Gleicher

-8-